[No. 31649.   Department Two.·  March 28, 1952.]

MERCANTILE INSURANCE COMPANY OF AMERICA, *Respondent,*
v. THEODORE JACKSON *et al., Defendants,* WESTERN
TRACTOR AND EQUIPMENT COMPANY, *Respond-
ent,* WILLIAM HULBERT MILL COMPANY,
*Appellant.*[1]

[1]Reported in 242 P. (2d) 503.

*Williams & Davis,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondent Western Tractor and Equipment Company.

*Clarke, Clarke & Albertson,* for respondent Mercantile Insurance Company of America.

FINLEY, J.—This interpleader action was initiated by Mercantile Insurance Company of America (hereinafter referred to as Insurer), to determine which of several claimants are entitled to proceeds from an insurance policy. The amount payable under the policy has been paid into court. The trial court decided that the proceeds of the policy should be paid to Western Tractor and Equipment Company (hereinafter referred to as tractor company). William Hulbert Mill Company, garnisher, has appealed. The pertinent facts are as follows:

A tractor, owned by Theodore Jackson and subject to a mortgage to the Peoples National Bank of Washington (hereinafter called the bank), was damaged. Jackson took the damaged tractor to the tractor company for repairs and advised them that he had coverage for the damage with the insurer. The tractor company, not satisfied with Jackson's credit standing, conferred directly with the insurer. The insurer authorized the necessary repairs and promised payment to the tractor company for the repairs in accordance with the terms of the insurance policy. Later, a draft for the amount of the repairs and made payable to Jackson, the bank and the tractor company, was delivered to Jackson. He presented it to the bank with the request that it be endorsed by the bank and returned to him. The bank refused. At that particular time Jackson was in default on his mortgage to the bank on the tractor. At this point, a representative of the tractor company telephoned Jackson, inquired about the check, requested Jackson to endorse it and leave it with the bank for transmission to the tractor company. Jackson said he would comply with the tractor company's

request. Shortly thereafter, Jackson endorsed the draft and delivered it to the bank. He gave the tractor company his personal note, secured by a second mortgage on the tractor, to cover the cost of repairs.

Jackson was also indebted to the William Hulbert Mill Company (hereinafter called the garnisher) in connection with certain logging operations. The garnisher procured and served a writ of garnishment on the bank and the insurer, attempting to tie up the draft and the insurance proceeds represented thereby. The date of the garnishment was subsequent to the date on which Jackson endorsed and delivered the insurance draft to the bank.

At this point, the bank commenced foreclosure of its mortgage by notice and sale. The tractor company attempted to foreclose its second mortgage by an action in the superior court, and brought the bank into the matter. Both mortgages on the tractor were foreclosed. Judgment was entered and the tractor was sold by the sheriff. The bank was completely paid off. The tractor company was not paid for its repairs to the tractor. It was at this stage of the matter that the insurer initiated its interpleader action to determine the rights of the parties to the proceeds of the insurance policy, which were then paid into court. Insurer's interest in this lawsuit is the proper disposition of the insurance proceeds and release from future liability in connection therewith. Jackson has defaulted, and since the bank's claim has been fully settled, the tractor company and the garnisher remain as the only claimants or active litigants in this lawsuit.

The function of garnishment proceedings is to permit a creditor to subject to the payment of his claim property of his debtor in the hands of a third person. A creditor can obtain no better right against a third party garnishee defendant than the principal debtor had as of the date of the garnishment. Consequently, our inquiry is whether Jackson had relinquished his rights to the insurance proceeds at the time the garnishment was attempted by the garnisher against the bank and the insurer.

■ We mentioned heretofore that the trial court held that the attempted garnishment was not effective. It is a well-settled proposition that an equitable assignment, prior in point of time, prevails over a subsequent garnishment. *Canterbury & Gilder v. Marengo Abstract Co.,* 166 Ala. 231, 52 So. 388, 139 Am. St. Rep. 30; *Liddle v. Hernandez,* 72 Colo. 585, 212 Pac. 821; 38 C. J. S. 273, 274, Garnishment, § 77. We have recognized this rule on numerous occasions. *Heermans v. Blakeslee,* 97 Wash. 647, 167 Pac. 128.

■ In order to accomplish an effective equitable assignment, an assignor must have intended to transfer a present interest in the debt or fund and, pursuant to such intention, must have made an absolute appropriation of the thing assigned, relinquishing all control or power of revocation over it to the use of the assignee. *Nickerson v. Hollet,* 149 Wash. 646, 272 Pac. 53; *Sneesby v. Livington,* 182 Wash. 229, 46 P. (2d) 733; 4 Am. Jur. 288, Assignments, § 76.

■ No particular form is necessary to constitute an equitable assignment. It can be accomplished orally or by a writing. Any words or transactions indicating an intent, on the one side, to assign, and an intent, on the other, to receive, are sufficient, assuming there is a valuable consideration. 6 C. J. S. 1101 *et seq.,* Assignments, § 58.

■ As we said in *Sundstrom v. Sundstrom,* 15 Wn. (2d) 103, 108, 129 P. (2d) 783:

"What amounts to a present appropriation constituting an equitable assignment is thus a question of intention to be gathered from a consideration of the language used, in the light of all the attendant facts and circumstances."

Error has been assigned relative to the trial court's findings of fact and conclusions of law. With the above-mentioned principles in mind respecting equitable assignments, we now analyze the evidence upon which the trial court based its findings of fact and conclusions of law in the instant case. The evidence shows that Jackson advised the tractor company that a policy with the insurer would cover the costs of the repairs; that he had consulted the insurance adjuster to that effect; that the tractor company notified

the insurer of the repairs to be made to the tractor. It was arranged that an adjuster of the insurer would meet with the tractor company so that the latter could "be squared away as to the liability on the claim," relative to the tractor repairs. There was testimony to the effect that the adjuster authorized the tractor company to make the repairs and that he indicated he would see that the tractor company was paid.

Pursuant to the arrangements indicated above, the insurer designated the tractor company as a payee of its draft, jointly with Jackson and the bank. By endorsing the draft and leaving it with the bank, Jackson effectively appropriated the insurance proceeds for the payment of the tractor repairs and put the matter completely beyond any subsequent control by him. He did all he possibly could have done to carry out his part of the arrangements with the tractor company. It is immaterial whether an assignment became effective, (a) at the time of and because of the negotiations between Jackson and the tractor company, the substance of which was communicated to the insurance company, or (b) subsequently, at the time of the endorsement and delivery of the check to the bank, since both transactions took place prior to the effectuation of the garnishment.

We are convinced that the evidence supports the findings and conclusions of the trial court that an effective equitable assignment of the insurance proceeds was consummated prior to the attempted garnishment. This disposes of the other contentions which appellant urges entitle him to relief.

The judgment of the trial court is affirmed.

GRADY, HILL, HAMLEY, and OLSON, JJ., concur.