[No. 38556.    Department Two.    October 13, 1967.]

ROBERT WISE PLUMBING & HEATING, INC., *Plaintiff*, v. ALPINE
DEVELOPMENT COMPANY, INC., *et al., Defendants,*
SUTHERLAN FIXTURE COMPANY, *Respondent,*
SECURITIES MORTGAGE COMPANY,
*Appellant.*\*

\*Reported in 432 P.2d 547.

*Monheimer, Schermer, Van Fredenberg & Smith, J. Dimmit Smith,* and *David D. Hoff,* for appellant.

*Murray, Scott, McGavick & Graves, E. M. Murray,* and *Robert L. Beale,* for respondent.

HAMILTON, J.—The defendant, Alpine Development Company, Inc., hereafter referred to as Alpine, as owner, developer and general contractor, proposed to construct a 48-unit prefabricated apartment building in the vicinity of the Tacoma Mall in Pierce County, Washington. To accomplish this objective, it sought and obtained approval of a construction loan in the amount of $350,000 from appellant, Securities Mortgage Company, hereafter referred to as Securities. The loan documents, consisting of the application, the mortgage, and a promissory note, were executed in late 1962 and provided that funds would be advanced as construction progressed, subject to Securities' control and approval. Approximately $70,000 was disbursed in November, 1962, consisting of a $50,000 advance to Alpine and the payment of various initial expenses.

Alpine then commenced negotiations with respondent, Sutherlan Fixture Company, hereafter referred to as Sutherlan, to fabricate and deliver integral structural components of the apartment building. The negotiations culminated in an agreed price for the work in the amount of

$109,300.25. Sutherlan, however, would not enter into a firm contract without an assignment of construction loan funds to insure payment. As a result, a document entitled "Assignment of Funds" was executed by Alpine on January 25, 1963, and accepted by Securities on January 30, 1963. This document reads as follows:

ASSIGNMENT OF FUNDS

January 25, 1963.

Securities Mortgage, Inc.
Securities Building
Seattle, Washington

RE: Alpine Village
*42nd and Prospect*

Gentlemen:
You are hereby authorized to remit directly the sum of $89,300.25 to Sutherlan Fixture Company, Tacoma, Washington, from the proceeds due the undersigned on the construction of the above captioned unit.

This assignment shall be irrevocable by the undersigned.

ALPINE DEVELOPMENT COMPANY, INC.
/s/ James R. Wornstaff
James R. Wornstaff
President

This assignment accepted this *January 30th,* 1963, subject to our controlling the funds in sufficient amount to cover and subject to closing conditions.

SECURITIES MORTGAGE, INC.
By /s/ *R. M. Maloney* Vice-President

DATE: *January 30, 1963*

On January 31, 1963, Securities issued an advance in the sum of $20,000 in the form of a check made payable to Alpine and Sutherlan as joint payees. Thereafter, on February 8, 1963, Sutherlan received the assignment document and executed a written contract with Alpine to perform the agreed upon prefabrication work. The contract acknowledged receipt of $20,000 as a down payment, but made no mention of any assignment of funds. The $20,000 check issued by Securities was endorsed by Sutherlan and re-

turned to Alpine for payment to the project engineer in satisfaction of past engineering services performed for Sutherlan.

Sutherlan started prefabrication work immediately and commenced delivery to the project site in July, 1963. Thereafter, and on August 16, 1963, Sutherlan submitted to Alpine an application for a progress payment in the amount of $56,729, on the basis of 78 per cent of the work having been performed. Payment was not forthcoming, and on September 16, 1963, Sutherlan submitted a second application to Alpine for a progress payment in the total sum of $64,599 predicated upon 86 per cent completion. When payment upon this request was not made, Sutherlan ceased deliveries.

During the interval between January 31, 1963, and August 29, 1963, Securities advanced directly to Alpine on the construction loan sums totaling $170,500. These advances, when added to prior advances and cast against the actual progress of construction, exceeded the optional advancement schedule set forth in the loan agreement and overrode an optional retained percentage provision. Securities then, on or about August 29, 1963, discovered that Alpine was not paying the construction accounts. Advances were halted and Securities undertook partial completion of the building. These steps were taken by Securities upon the strength of provisions in the loan agreement whereby Securities was in control of all advances and could assume completion of construction in the event of Alpine's default.

In the first part of November, 1963, Sutherlan made demands on Securities for payment of its progress applications upon the basis of the assignment document. Whether copies of Sutherlan's August and September progress payment applications had been originally forwarded to Securities is in dispute—Securities contending the November demand constituted its first notice of any work by or payments due Sutherlan. Securities did not honor Sutherlan's demands. Instead, Securities devoted the remainder of the $350,000 construction loan fund (then approximately $90,-

000) toward the partial completion and conservation of the apartment building.

Sutherlan, after commencement of this suit and by stipulation of the parties, furnished $9,709.61 worth of fabricated materials toward preservation and improvement of the building, for which it was paid. Nevertheless, after obtaining credit commitments in the amount of $12,709.71 from suppliers for returnable items, Sutherlan still had sundry undelivered fabricated materials on hand.

In June, 1964, the plaintiff, Robert Wise Plumbing & Heating, Inc., another subcontractor on the building project, commenced this action to foreclose a labor and materialman's lien against Alpine. Sutherlan and other lien claimants were joined as party defendants. Sutherlan, by answer, cross claim and third-party complaint, sought foreclosure of its lien claim against Alpine and recovery against Securities, as third-party defendant, for breach of the assignment document in paying the funds covered thereby over to Alpine. Securities, in answer to the third-party complaint, denied liability and asserted, in essence, that the document in question did not amount to an assignment of the funds under the circumstances prevailing, and that it was without timely notice of Sutherlan's contract or claims thereunder.

The issues raised by the third-party proceeding came before the trial court upon Sutherlan's motion for summary judgment. Affidavits, depositions, exhibits, and briefs were filed on behalf of both parties. After considering the material and arguments before it, the trial court determined that no disputed issue of material fact existed with respect to the question of Securities' liability and accordingly entered an interlocutory summary adjudication, or a partial summary judgment. Trial on the remaining damage issue thereafter ensued, following which the trial court entered findings of fact, conclusions of law, and judgment, in the third-party action, granting recovery on behalf of Sutherlan against Securities in the sum of $66,082.05, together with interest and costs. Securities appeals.

Securities by its assignments of error, in essence, attacks (a) the trial court's interlocutory summary adjudication, and (b) the subsequent allowance and computation of damages.

■ With respect to the trial court's interlocutory summary adjudication of liability, it is conceded that the only disputed factual issue arising out of the affidavits, depositions, and exhibits presented on the motion for summary judgment is whether Sutherlan notified Securities of its contract with Alpine and of its requested progress payments prior to November, 1963. Otherwise, the factual background as heretofore outlined is undisputed. However, for purposes of the summary judgment procedure, we are required, as was the trial court, to review the material submitted for and against the motion in a light most favorable to Securities. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963); *Foote v. Hayes,* 64 Wn.2d 277, 391 P.2d 551 (1964). Accordingly, we assume for purposes of our discussion that Securities was not formally and affirmatively advised of the terms of Sutherlan's contract with Alpine and/or Sutherlan's performance or demands for payment until the latter part of 1963.

Against this background, Securities' assignments of error and arguments on this aspect of the case basically present two questions: (1) Does the purported assignment document constitute an effective partial assignment of a future monetary obligation, and (2) is notice to Securities of the maturity of the obligation essential to Securities' liability.

With respect to the first question, Securities argues (a) the language of the document in question is not that of an effective assignment, (b) the surrounding circumstances and the actions of the parties negate any intention that the document be an assignment, (c) Securities' acceptance of the assignment was conditional, and (d) any rights acquired by Sutherlan under the document were defeated by Alpine's default.

We find no persuasive substance to Securities' contentions and arguments upon this score.

■■ In reaching our conclusion with regard to arguments (a) and (b) above, we start from the premise that technically speaking, as the parties recognize, we deal here with an equitable as distinguished from a legal assignment, and that no precise or stereotyped language is essential to the creation of such an assignment. *Mercantile Ins. Co. of America v. Jackson*, 40 Wn.2d 233, 242 P.2d 503 (1952). To establish an equitable assignment it is sufficient if the language utilized, coupled with the surrounding circumstances, plainly reveals an intent on the part of the assignor to make an actual or constructive transfer to the assignee of a present interest in the debt, fund, or subject matter of the assignment, even though the circumstances do not permit the assignee's immediate exercise of the interest, and, in pursuit of such intent, the assignor unequivocally relinquishes his control or power of revocation over the debt, fund, or subject matter of the assignment to the use or benefit of the assignee. *Sundstrom v. Sundstrom*, 15 Wn.2d 103, 129 P.2d 783 (1942); *Mercantile Ins. Co. of America v. Jackson, supra;* 6 Am. Jur. 2d *Assignments* § 83 at 264-65 (1963). As pointed out in the latter authority, a reliable test of an equitable assignment is whether the debtor would be justified in paying or delivering the subject matter to the designated assignee.

In the instant case, we are convinced that the language of the assignment document ("You are hereby authorized to remit directly . . . to Sutherlan" and "This assignment shall be irrevocable by the undersigned.") coupled with the circumstance of Sutherlan's demand for such a security device before entering into the construction contract, clearly establishes Alpine's intent that the document be an effective assignment. This view is further buttressed by the fact that Securities accepted the document as an "assignment," and forthwith issued a $20,000 advance upon the strength of it. The circumstance that the advance was issued jointly to Alpine and Sutherlan, instead of directly to Sutherlan, is consistent with Securities' reservation of control over the funds "in sufficient amount to cover." It is not,

however, inconsistent with Alpine's intent to effect an assignment.

■■ Securities, by argument (c), contends that provisions of the loan agreement rendered the funds to be advanced nonassignable; hence its conditional acceptance, *i.e.,* "subject to our controlling the funds in sufficient amount to cover and subject to closing conditions," freed it of any direct responsibility or liability to Alpine's subcontractor and assignee, Sutherlan. This is a non sequitur. In the first place, Securities written acceptance of the assignment and its initial advancement of funds for the benefit of Sutherlan clearly indicate a waiver of the nonassignability provision. In the second place, the loan agreement provisions, when read as a whole, render it manifest that advances to be made on the loan as the work progressed were for the primary purpose of *paying for the labor and materials* expended on the construction project. These controls were reserved in Securities by the loan agreement, as well as in the acceptance of the assignment, to assure such payments so that Securities would be protected against unpaid claims. It would be a novel theory, indeed, which would now permit Securities to escape the responsibility cast upon it by the partial assignment and its acceptance thereof upon the grounds that its acceptance was made subject to controls and conditions which it imposed for the purpose of enabling it to meet the payments earned by Sutherlan, the assignee. Particularly is this so when it appears that Securities failed to timely exercise or observe such controls.

■ Under argument (d) Securities asserts Alpine's default defeated Sutherlan's rights under the assignment. It premises this argument upon the basis that an assignee's rights can rise no higher than the assignor's, and that payment to Sutherlan was conditioned upon Alpine's full performance of the loan agreement, including completion of the apartment building free of all liens and encumbrances. Hence, Securities argues, since Alpine defaulted, and was thereby precluded from further advances under the loan agreement, Sutherlan's rights under the assignment were

terminated. Again, this argument ignores the fact that the provisions and conditions of the loan agreement, as well as those in Securities' acceptance of the assignment, were designed to insure payment for labor and materials. Furthermore, the argument overlooks the partial character of the assignment and the nature of Alpine's default, *i.e.*, the failure to pay for labor and materials expended on the project, including those supplied by Sutherlan. It was this failure that halted construction, rather than lack of performance by the workmen and materialmen. And, it was this failure which could have been averted had Securities prudently and timely exercised and observed the protective controls and conditions which it reserved unto itself. The bare fact remains that Alpine, through its subcontractor Sutherlan, did substantially perform on the construction phase of the project covered by the assignment and payments became due thereby. Having paid more than $170,000 of the loan funds to Alpine after notice and acceptance of the assignment to Sutherlan, and without any reservations respecting that assignment, Securities is now estopped from asserting the financial defalcations of Alpine as a defense to Sutherlan's performance. *Cf. Structural Gypsum Corp. v. National Commercial Title & Mortgage Guar. Co.,* 107 N.J. Eq. 32, 151 Atl. 839 (1930).

We turn then to the second question presented on this aspect of the case—whether Securities was entitled to notice of Sutherlan's performance as a condition to liability under the assignment.

In this respect, Securities contends that it did not breach the assignment document for the reason that at the time it halted advances (August 29, 1963) it still had sufficient funds (approximately $90,000) on hand to meet Sutherlan's demands, had it then been aware of them. Furthermore Securities argues, the loan agreement gave it the prerogative to assume completion of the building and to devote the remaining funds to that end. Therefore, Securities says, when Sutherlan failed to deliver a copy of its contract with Alpine and its progress payment demands to Securities,

prior to November 8, 1963, it forfeited its rights to the superior right of Securities to complete the building.

The argument is ingenious; however, it by-passes the fact that Securities had notice of and accepted the assignment in question—an assignment of approximately 25 per cent of the loan funds. It was thereby put upon notice of a potential and substantial claim in and to work progress advances to be made during the course of construction. It is admitted that Securities knew that Sutherlan was to supply materials for the building, and prudent inquiry would have readily revealed that the materials were integral and essential components to erection of the building. And, under the loan agreement Securities had the right to (a) insist upon limiting its advances to a definite work progress schedule, (b) retain 35 per cent of the loan fund until completion of the building, or (c) pay labor and materialmen direct. It exercised none of these rights, although the very existence of such options would appear to invite and justify a closer contact with the construction work, the progress thereof, the identity of the subcontractors and Alpine's use of the funds than was seemingly observed.

As we pointed out in *Ropes, Inc. v. Rubinstein,* 4 Wn.2d 380, 104 P.2d 329 (1940), the notice to and acceptance by an obligor of an assignment of funds to become due, imposes a duty upon the obligor to abide thereby and that payment thereafter of the funds to the assignor, at or before such time as the debt has matured, is no defense against the claim of the assignee. See, also, *Dickerson v. Spokane,* 26 Wash. 292, 66 Pac. 381 (1901).

We accordingly hold that delivery by Sutherlan of a copy of its contract with Alpine, and notice of its performance thereunder prior to November 8, 1963, was not a condition precedent to Securities' liability under the assignment.

On this phase of the case we conclude that the trial court correctly granted the interlocutory adjudication of liability.

Securities final assignment of error and argument in support thereof is addressed to the trial court's computation of damages. The trial court essentially computed damages as follows:

| | |
|---|---:|
| Contract price | $109,300.25 |
| Less returnable items | 12,905.71 |
| | |
| Amount of damage | 96.394.54 |
| Plus sales tax | 3,855.78 |
| | |
| Total damage | $100,250.32 |
| | |
| Amount due under assignment | $ 89,300.25 |
| Less advance payment of January 31, 1963 | 20,000.00 |
| | |
| Due under assignment on November 8, 1963 | $ 69,300.25 |
| Plus interest to December 8, 1963 | 4,504.51 |
| | |
| Total due December 8, 1963 | $ 73,804.76 |
| Less payment December 8, 1963 | 9,709.61 |
| | |
| Due December 8, 1963 | $ 64,095.15 |
| Plus interest to date of judgment | 1,986.90 |
| | |
| Amount of judgment | $ 66,082.05 |

Securities' underlying quarrel with the computation of damages is the trial court's refusal to credit Sutherlan's returnable items against the balance found due under the assignment.

As near as we can ascertain from the arguments presented, and the trial court's oral decision and findings, the trial court proceeded upon the theory that Securities was not entitled to duplicate the potential claims of Alpine for mitigation of damages. In this respect, the trial court reasoned that Sutherlan's over-all damages against Alpine was the amount of its contract, less such especially fabricated items as Sutherlan could return and obtain credit upon from its suppliers. The trial court determined Sutherlan was obligated to make such a deduction in mitigation of its damages if it was to be entitled to further recourse against Alpine beyond the amount of the assignment. From this premise, the trial court then concluded that since the amount of the assignment was less than Sutherlan's over-all damage, and since allowance was made against the assignment for the $20,000 advance of January 31, 1963, which might otherwise have been considered as a down

payment on the contract rather than an advance on the assignment, Securities was not entitled to both deductions.

Securities has cited no authorities in support of its argument that the trial court calculated the damages upon a fundamentally wrong basis, and we do not conceive that, under all of the circumstances, the equities dictate a different result. Accordingly, we find no reversible error in the trial court's computation.

The judgment is affirmed.

FINLEY, C. J., DONWORTH, J., and BARNETT, J. Pro Tem., concur.

---

December 22, 1967. Petition for rehearing denied.