IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

2015 AUG 26 PM 2: 20
BY___________
DEPUTY

|  |  |
|---|---|
| HERITAGE RESTORATION, INC.,<br><br>Respondent,<br><br>v.<br><br>DOUGLAS RADABAUGH and SHIRLEY RADABAUGH, husband and wife,<br><br>Appellants. | No. 45925-6-II<br><br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Douglas and Shirley Radabaugh appeal after the trial court ordered that funds held in the court registry should be disbursed to Heritage Restoration (Heritage). Heritage performed work on the Radabaughs' home. After disputes arose, litigation ensued. Pursuant to a stipulated order, the Radabaughs' insurance company paid the policy proceeds into the court registry after the parties could not agree to whom the funds belonged. The Radabaughs went through bankruptcy procedures and at the conclusion, Heritage moved the trial court to disburse the funds to it. The trial court ruled in Heritage's favor. The Radabaughs argue that the trial court modified a pre-bankruptcy judgment and circumvented bankruptcy law. Because the trial court's order disbursing funds to Heritage did not modify a judgment and because the Radabaughs presented no evidence the trial court circumvented bankruptcy law, we affirm.

FACTS

I.      WORK ON THE RADABAUGHS' HOME

Snow and rain damaged the Radabaughs' home. Following the submission of a claim for damages with their insurer, Grange Insurance Association (Grange), the Radabaughs hired Heritage to restore the interior of their home. The Radabaughs and Heritage entered into a written contract. Terms of the contract included that "'[Heritage] will not go beyond the general scope

of the insurance coverage without approval of [the Radabaughs]'" and that "'[the Radabaughs agree] to immediately forward all draws issued as partial or full payment regarding this claim.'"" Clerk's Papers (CP) at 36. Additionally, the contract stated that the Radabaughs authorized and directed Grange to "'pay [Heritage] directly and/or include [Heritage] on all draws issued as partial or full payment regarding this claim.'" CP at 37.

## II. DISPUTE

Dissatisfied with Heritage's work, the Radabaughs refused to pay. Heritage then filed a complaint for breach of contract, unjust enrichment, and lien foreclosure against the Radabaughs.[1] The Radabaughs filed counterclaims and sought damages.

## III. INSURANCE PROCEEDS

Prior to litigation, Grange issued a two-party check to the Radabaughs and Heritage for $17,157.50. The Radabaughs sent Heritage the check, endorsed to Heritage, adding the phrase "payment in full." CP at 39. Heritage retained the check, but did not cash it. Because the parties disputed to whom the insurance funds belonged, the parties jointly moved the trial court for an order providing that Grange, a non-party, deposit $17,157.50 (funds) into the court registry "by way of a check made payable to 'Thurston County Superior Court Clerk's Office.'" CP at 30. The trial court granted the motion and Grange deposited the funds.

## IV. LITIGATION

After a trial, the court found that Heritage substantially completed the work contemplated by the contract and under a *quantum meruit* theory ruled that the Radabaughs owed Heritage

---

[1] Heritage had previously recorded a lien against the Radabaughs' property.

$24,350. On October 14, 2011, the trial court entered a $20,600 judgment in Heritage's favor.[2] The trial court's findings of fact, conclusions of law, and judgment did not address ownership of the funds in the court registry, nor did it release the funds.

On November 9, 2011, Heritage moved for release of the funds in the court registry. It argued that the funds "should be released to Heritage in partial satisfaction of its judgment" against the Radabaughs and that the Radabaughs "legally assigned the funds to Heritage when they signed the [c]ontract." CP at 57, 58.

V.   BANKRUPTCY

On November 16, 2011, the Radabaughs filed for bankruptcy under chapter 7 of the United States Bankruptcy Code.[3]   Pursuant to 11 U.S.C. § 362, an automatic stay of all judicial proceedings went into effect and notice was filed with the trial court on November 17, 2011. On November 18, 2011, Heritage received notice of the bankruptcy as creditors subject to discharge of the Radabaughs' bankruptcy filing. On February 27, 2012, the United States Bankruptcy Court granted the Radabaughs a discharge under 11 U.S.C. § 727.[4]

---

[2] The trial court subtracted repair costs and the value of damage to the Radabaughs' home from the final judgment amount.

[3] Title 11 U.S.C.

[4] The record on appeal contains only the notice of discharge that specifies "[t]he discharge prohibits any attempt to collect from the debtor a debt that has been discharged" and "[t]he chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged." CP at 75. The record does not contain a schedule of discharged debts. However, in a hearing before the trial court, the Radabaughs and Heritage both acknowledged that the judgment was discharged in the bankruptcy.

On May 17, 2012, the bankruptcy Trustee moved to abandon the funds held in the court registry. The notice and motion for abandonment refers to the funds as "[t]he asset . . . described on schedule C of the bankruptcy schedules as '$17,150.50 check in Thurston Co. Superior Court registry from insurance payment to Radabaugh.'" CP at 90. On June 8, 2012, Heritage filed a response to the Trustee's motion. On June 12, 2012, the Trustee withdrew its motion with the bankruptcy court.

On December 9, 2013, the Trustee filed a report stating, "[T]here is no property available for distribution from the estate over and above that exempted by law."[5] CP at 98.

VI.    HEARING ON MOTION TO DISBURSE FUNDS

On March 7, 2012, the Radabaughs filed a response to Heritage's motion for release of the funds, arguing that the trial court should release the funds to the Radabaughs as the owners of the funds. On March 21, 2012, Heritage responded by stating that the funds were already Heritage's property because the funds had been legally and equitably assigned before the bankruptcy. Heritage also argued that the Radabaughs' bankruptcy discharge did not prohibit the trial court from disbursing the funds to Heritage because Heritage, as the rightful owner of the money, was not attempting to satisfy the judgment against the Radabaughs.

During the March 30, 2012 trial court hearing, the Radabaughs argued that the bankruptcy's stay of proceedings was still in effect. The Radabaughs' position was that because Heritage's judgment against the Radabaughs "was entirely discharged in the bankruptcy court,"

---

[5] Although on appeal both parties imply that the Radabaughs listed the funds in the court registry as exempt property in the bankruptcy action, the records before the trial court and us do not demonstrate whether the Radabaughs actually listed the funds as an exemption and whether the bankruptcy court treated them as an exemption. At the time the Radabaughs filed for bankruptcy, the ownership of the funds was in dispute and had not been resolved by the trial court.

the funds were "an asset that was abandoned back to the debtor post-bankruptcy." RP (Mar. 30, 2012) at 12. The trial court dismissed the motion without prejudice and asked the parties to supplement the record regarding the bankruptcy.

## VII.    ORDER DISBURSING FUNDS TO HERITAGE

On January 13, 2014, Heritage again moved the trial court to release the funds. At the February 21 hearing, Heritage agreed that the bankruptcy court discharged the judgment against the Radabaughs, but it again argued that the Radabaughs legally assigned the funds to Heritage prior to bankruptcy, and therefore "the money was already Heritage's under assignment." Report of Proceedings (RP) (Feb. 21, 2014) at 9. Heritage argued that because the trial court entered a judgment for $20,600 in Heritage's favor, the funds, which were deposited into the court registry prior to the trial and judgment, belonged to Heritage. It also argued that the Radabaughs legally assigned the funds to Heritage under the original contract because the Radabaughs manifested an intention to assign the funds to Heritage. Alternatively, Heritage argued that the Radabaughs also equitably assigned the funds to Heritage. The Radabaughs again argued that because the judgment was discharged in the bankruptcy, "it is no longer an operative way [for Heritage] to get at this money." RP (Feb. 21, 2014) at 12.

After considering counsels' arguments and the evidence presented, the trial court granted Heritage's motion and released the funds to Heritage. It entered a finding that "[a]t no time during the pendency [of] the Radabaughs' bankruptcy action did the Trustee in that case file any motion in any court asserting that the Radabaughs held any claim to or an ownership interest in the funds held in this court's registry under this cause." CP at 117. Thus, the trial court ordered that "Heritage is the owner of the funds on deposit with the registry of court and is the party entitled to

the same, because the Radabaughs legally or equitably assigned the funds to Heritage."[6] CP at 118.

The Radabaughs appeal.[7]

## ANALYSIS

The Radabaughs argue that the trial court reformed a judgment discharged in bankruptcy and improperly disbursed money to Heritage that was being held in the court's registry pursuant to a stipulated order. We disagree.

I.  MOTION TO STRIKE FROM APPELLANT'S BRIEF

As a preliminary matter, Heritage moves to strike the following factual statements in the Radabaughs' brief that are unsupported by citations to the record:

> Heritage Restoration received a money judgment against the Radabaughs based on Findings of Fact and Conclusions of Law prepared by Heritage Restoration's Counsel and approved and issued by the Trial Court.
> . . . .
> Heritage Restoration filed a claim in bankruptcy as a creditor of the Radabaughs. That claim was based entirely on the judgment it had received.
> . . . .
> The Heritage judgment was not paid in full in the bankruptcy.

Br. of Resp't at 7 (quoting Br. of Appellants at 4, 5, 9). Heritage argues that "[o]ne of the above claims is untrue, one is intentionally misleading, and the other requires further explanation and context." Br. of Resp't at 7. The purpose of rules governing the content of appellate briefs is to enable us and opposing counsel to review the accuracy of the factual statements made in the briefs.

---

[6] The Radabaughs neither assigned error to nor argued or briefed the issue that Heritage had not been legally or equitably assigned the funds.

[7] The record on appeal does not contain the following items: the bankruptcy petition with attached schedules, proof of claims, claimed exemptions, or documentation regarding the abandonment.

*Litho Color, Inc. v. Pac. Emp'rs Ins. Co.*, 98 Wn. App. 286, 305, 991 P.2d 638 (1999); RAP 10.3(a), 10.4. Because we will not consider any statements unsupported by reference to the record or by citation of authority, we grant Heritage's motion. RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

II.    STANDARD OF REVIEW

Unchallenged findings of fact are verities on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). "An unchallenged conclusion of law becomes the law of the case." *King Aircraft Sales, Inc. v. Lane*, 68 Wn. App. 706, 716, 846 P.2d 550 (1993).

RAP 10.3(g) provides that an "appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." Generally, we will not address issues that a party does not raise appropriately. *CalPortland Co. v. LevelOne Concrete LLC*, 180 Wn. App. 379, 392, 321 P.3d 1261 (2014). But where a party's brief makes clear what part of the decision below is being challenged, we will overlook the party's failure to specifically assign error to it. *CalPortland Co.*, 180 Wn. App. at 392.

We review the trial court's decision to disburse the funds held in the court registry for an abuse of discretion. *Pac. Nw. Life Ins. Co. v. Turnbull*, 51 Wn. App. 692, 699, 754 P.2d 1262 (1988). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Pac. Nw. Life. Ins.*, 51 Wn. App. at 699.

III.    ORDER TO DISBURSE

A.    Findings of Fact Are Verities on Appeal

The Radabaughs failed to assign error to any findings of fact as required under RAP 10.3(g). Because unchallenged findings of fact are verities on appeal, we treat the following findings as verities on appeal:

At no time during the pendency [of] the Radabaughs' bankruptcy action did the Trustee in that case file any motion in any court asserting that the Radabaughs held any claim to or an ownership interest in the funds held in this court's registry under this cause.

CP at 117.

B.    The Radabaughs Failed to Assign Error to the Trial Court's Order to Disburse[8]

In this case, the Radabaughs listed assignments of error; however, all of the assignments of error assert that the trial court either reformed a judgment or circumvented the bankruptcy court's order when it disbursed funds. None assigns error to the disbursal order. The Radabaughs' arguments misconstrue the trial court's order. The trial court never reformed Heritage's judgment. It merely determined who rightfully owned the funds in the registry. In addition, although the trial court gave the parties an opportunity to supplement the trial court record with all of the relevant bankruptcy documents and orders, the record is devoid of any evidence demonstrating the bankruptcy court exercised control of the funds in the trial court registry.

There does not appear to be a dispute that the judgment was discharged in bankruptcy; however, the trial court found that Heritage already owned the funds: "Heritage is the owner of the funds on deposit with the registry of court, and is the party entitled to the same, because the

---

[8] The dissent claims the Radabaughs did assign error to the order to disburse. However, all of the Radabaughs' assignments of error and issues pertaining to the assignments of error reference either a judgment modification or a bankruptcy discharge. The Radabaughs claim the trial court modified the judgment after the bankruptcy court discharged it. The trial court neither modified the judgment nor disbursed money based on a discharged judgment. None of the Radabaughs' assignments of error or issues pertain to the court's order to disburse the money. Assuming the Radabaughs have properly assigned error, they have nonetheless failed to brief or argue these issues addressed by the dissent and we do not consider them. RAP 10.3(a)(6), RAP 12.1; *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012); *Wash. Prof'l Real Estate LLC v. Young*, 163 Wn. App. 800, 818 n.3, 260 P.2d 991 (2011).

Radabaughs legally or equitably assigned the funds to Heritage."[9] CP at 118. The trial court disbursed the funds not to satisfy Heritage's judgment, but because it found Heritage owned the funds. And, the trial court had no evidence the funds had been dealt with in the bankruptcy proceedings or that the funds had been awarded to either party. Therefore, we affirm the trial court because the assignments of error and issues the Radabaughs raise are inadequate to merit review.

C.     The Trial Court Did Not Abuse Its Discretion.

In the event that we misconstrue the Radabaughs argument, we also decide the merits of the case and hold that the trial court did not abuse its discretion by ordering that the funds belonged to and should be distributed to Heritage.

The trial court "has the power and responsibility of protecting the fund [in the court registry] and of disposing of it in accordance with the applicable principles of law and equity for the protection of the litigants and the public whose interests are affected by the final disposition thereof." *Pac. Nw. Life. Ins.*, 51 Wn. App. at 699 (quoting *Wilson v. Henkle*, 45 Wn. App. 162, 169, 724 P.2d 1069 (1986)[10]). In other words, the trial court only has authority to disburse the funds within its custody to the party that demonstrates they are entitled to the funds.

The funds held in the court registry are governed by CR 67 and RCW 4.44.480-.500. CR 67 provides:

> In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money . . . a party . . . may deposit with the court all or any part of such sum . . . [which] shall be deposited and withdrawn in accordance with the provisions of RCW 4.44.480 through 4.44.500.

---

[9] The Radabaughs do not assign error to the trial court's determination that Heritage is the owner of the funds under assignment, nor do the Radabaughs provide any argument on appeal regarding this issue. *See CalPortland Co.*, 180 Wn. App. at 392.

[10] Superseded by statute on other grounds as stated in *Ferguson Firm, PLLC v. Teller & Assocs., PLLC*, 178 Wn. App. 622, 632, 316 P.3d 509 (2013), *review denied sub nom. Ferguson Firm, PLLC v. Waid*, 180 Wn.2d 1025, 328 P.3d 903 (2014).

Once the funds are deposited with the court, they are "subject to the further direction of the court" and "shall not be loaned out, unless, with the consent of all the parties having an interest in, or making claim to the same." RCW 4.44.480, .500. Funds deposited in the court registry are held in *custodia legis*. *See Maybee v. Machart*, 110 Wn.2d 902, 904, 757 P.2d 967 (1988).

Here, the parties could not agree to whom the funds belonged and they jointly moved for an order providing that Grange deposit funds into the court registry "by way of a check made payable to 'Thurston County Superior Court Clerk's Office.'" CP at 30. It is clear, however, that the funds belonged to either the Radabaughs or Heritage. There is nothing in the record to show that the bankruptcy court's actions affected the funds. Therefore, after considering evidence at trial and in the motions to disburse, the trial court found that Heritage, not the Radabaughs, owned the funds. The Radabaughs do not challenge this finding. We cannot say the trial court abused its discretion in disbursing the funds to Heritage. Its decision is neither manifestly unreasonable nor based on untenable grounds or reasons. *See Pac. Nw. Life. Ins.*, 51 Wn. App. at 699.

IV.   ATTORNEY FEES

Heritage requests attorney fees on appeal. We may award attorney fees to the prevailing party on appeal if "allowed by statute, rule, or contract and the request is made pursuant to RAP 18.1(a)." *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 535, 79 P.3d 1154 (2003). The contract between Heritage and the Radabaughs provides for reasonable attorney fees and court costs "[i]n the event this account is referred to an attorney for collection." CP at 13. Here, the Radabaughs' account was referred to an attorney for collection when Heritage filed its complaint. Thus, as the prevailing party, Heritage is entitled to attorney fees on appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

I concur:

Maxa, P.J.

LEE, J. (dissenting) — I respectfully disagree with the majority's narrow interpretation of what is required to assign error in a case. Here, the assignments of error and arguments made in Radabaugh's briefs clearly show that they challenge the trial court's order disbursing the funds that had been deposited into the registry of the court to Heritage. Therefore, the merits of the appeal should be reached.

In reaching the merits of the appeal, I also respectfully disagree with the majority and would hold that the trial court's conclusion that Heritage "owned" the funds because Radabaugh legally or equitably assign the funds to Heritage is not supported by any findings of fact. Therefore, the trial court erred. Accordingly, I would reverse and remand for the trial court to determine which party is rightfully entitled to the funds held in the court registry.

A. ASSIGNMENTS OF ERROR

I concur with the majority that RAP 10.3(g) provides that we will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto and will not address issues that a party does not properly raise. Majority at 7. I also concur with the majority that where a party's brief makes perfectly clear what part of the decision below is being challenged, we will overlook the party's failure to specifically assign error to it. Majority at 7. I disagree, however, with the majority's narrow interpretation of Radabaugh's assignments of error and the majority's conclusion that "[t]he Radabaughs neither assigned error to nor argued or briefed the issue that Heritage had not been legally or equitably assigned the funds," that "all of the Radabaughs' assignments of error and issues pertaining to the assignments of error reference either a judgment modification or a bankruptcy discharge," and that "[n]one assigns error to the disbursal order." Majority at 6, n.6; majority at 8, n.8; majority at 8.

The majority, relying on RAP 10.3(g), asserts that Radabaugh does not assign error to the superior court's disbursement order. Majority at 8. However, Radabaugh's first assignment of error states:

> The Trial Court Erred in Disbursing Money Held in the Registry of Court to Respondent Heritage Restoration based on a Judgment Heritage Restoration had Obtained Against the Appellants Radabaugh when the Radabaughs had Filed for and Obtained a Bankruptcy Discharge of Debts, Using one of their Property Exemptions to Secure the Money in Court, in a Bankruptcy Proceeding in which Heritage Restoration had Filed a Creditor's Claim Based on Its Judgment.

Br. of Appellant at 2. Radabaugh also indentifies the following "*Issues Pertaining to Assignments of Error*":

> 3.      Is it proper for a Trial Court to disregard a bankruptcy discharge to pay a judgment based on an equitable right to payment of money when the Bankruptcy Code at 11 U.S.C. § 101(5)(8)(A) & (B) specifically provides that such equitable claims are discharged along with purely legal claims to payment of debt?
>
> 4.      Is it proper for Trial Court to disburse money belonging to a judgment debtor in partial payment of a judgment that has been discharged in bankruptcy prior to the disbursement?

Br. of Appellant at 3.

In the opening brief, Radabaugh presented six pages of argument to support the contention that the trial court erred in disbursing the funds held in the court registry to Heritage. These arguments relate to Radabaugh's contention that (1) Heritage's claim against Radabaugh is legal, not equitable; and therefore, the trial court exhibited "an improper use of equitable powers to provide equitable equivalent of a legal remedy when the legal remedy is sufficient as a matter of law," (2) "whether conceived legally or equitably, Heritage Restoration's claim was discharged by the Radabaugh bankruptcy prior to disbursement of the Radabaugh insurance proceeds held by the Court," and (3) the trial court "erred by disbursing exempt money belonging to the Radabaughs, in circumvention of bankruptcy law." Br. of Appellant at 10, 13, 15

13

We must liberally interpret the appellate rules "to promote justice and facilitate the decision of cases on the merits." RAP 1.2. "Cases and issues will not be determined on the basis of compliance or noncompliance" with the appellate rules, except in compelling circumstances where justice demands. *Id.* Here, there are no compelling circumstances where justice demands refusing to address the merits of this case. Because we interpret the Rules of Appellate Procedure liberally "to promote justice and facilitate the decision of cases on the merits," Radabaugh's lack of precise language saying "we challenge the court's disbursement order" should be forgiven because their briefing as a whole, including the assignments of error and arguments, is based on the argument that the trial court erred by ordering the funds be released to Heritage.

B.     THE TRIAL COURT'S ORDER RELEASING FUNDS TO HERITAGE

The majority holds that the trial court "disbursed the funds not to satisfy Heritage's judgment, but because it found Heritage owned the funds." Majority at 9. The majority's opinion assumes that the trial court's determination that Heritage owned the funds was correct. I disagree.

1.     Standard of Review

As acknowledged by the majority, we review the trial court's decision to disburse the funds held in the court registry for an abuse of discretion. Majority at 9; *Pac. Nw. Life Ins. Co. v. Turnbull*, 51 Wn. App. 692, 699, 754 P.2d 1262, *review denied*, 111 Wn.2d 1014 (1988). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Pac. Nw. Life. Ins.*, 51 Wn. App. at 699.

As also acknowledged by the majority, the trial court only has the authority to disburse funds held in the court registry to the party that demonstrates they are entitled to the funds. Majority at 9. Here, the trial court concluded that Heritage was the "owner" of the funds "because

14

the Radabaughs legally or equitably assigned the funds to Heritage." Clerk's Papers (CP) at 124. In reaching this conclusion, the trial court abused its discretion.

2.    Heritage's Claim To The Funds Was Discharged In Bankruptcy

Under federal Bankruptcy Code, the commencement of a bankruptcy action "creates an estate comprising all legal or equitable interests of the debtor in property." *Nw. Wholesale, Inc. v. PAC Organic Fruit, LLC*, 183 Wn. App. 459, 483, 334 P.3d 63 (2014), *review granted*, 182 Wn.2d 1009 (2015); 11 U.S.C. § 541(a). "A bankruptcy debtor has an affirmative duty under the Bankruptcy Code to disclose all assets, including contingent and unliquidated claims." 11 U.S.C. § 521(a)(1)(B); *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 539, 160 P.3d 13 (2007).

In a bankruptcy action, the "bankruptcy trustee is required to marshal assets of the bankruptcy debtor and use them to pay creditors." *Krueger v. Tippett*, 155 Wn. App. 216, 221, 229 P.3d 866 (2010). Under 11 U.S.C. §§ 541 and 542, all property which the debtor owns or may have an interest in becomes part of the bankruptcy estate. 11 U.S.C. § 541(a), § 542(a). This includes property in the possession of others.[11] 11 U.S.C. § 541(a), § 542(a).

"Upon the filing of a petition in bankruptcy, a stay issues by operation of law which prevents the commencement or continuation of any judicial proceeding against the debtor." *Anderson v. City of Seattle*, 123 Wn.2d 847, 852 n.2, 873 P.2d 489 (1994); 11 U.S.C. § 362(a)(1). The stay is superseded by a permanent injunction upon discharge, which prohibits third parties

---

[11] Assets that are "burdensome" or of "inconsequential value" to the estate may be abandoned by the Trustee. 11 U.S.C. § 554(a). When the Trustee abandons property, "'title reverts to the bankrupt, nunc pro tunc.'" *Krueger*, 155 Wn. App. at 222 (quoting *Mason v. C.I.R.*, 646 F.2d 1309, 1310 (9th Cir. 1980)); *Brown v. O'Keefe*, 300 U.S. 598, 602-603, 57 S. Ct. 543, 81 L. Ed. 827 (1937). Abandonment does not create an interest in or transfer property to a creditor. *Krueger*, 155 Wn. App. at 222.

from pursuing the debtor for the discharged debt. 11 U.S.C. § 524(a)(2). "Any attempt to modify the permanent injunction must be made in accordance with federal bankruptcy law." *Anderson*, 123 Wn.2d at 852 n.2.

Here, the record demonstrates that the bankruptcy trustee filed, then withdrew, its motion to abandon the funds held in the court registry. Thus, the funds most likely was a part of the bankruptcy estate, but the record before the trial court and this court is insufficient to determine whether the funds actually became part of the bankruptcy estate.

A debtor must identify, list, and notify creditors. *Herring v. Texaco, Inc.*, 161 Wn.2d 189, 196, 165 P.3d 4 (2007) (citing *In re Maya Constr. Co.*, 78 F.3d 1395, 1399 (9th Cir. 1996)). Known creditors are entitled to actual notice before their claims are discharged. *City of New York v. N.Y., New Haven & Hartford R.R.*, 344 U.S. 293, 296, 73 S. Ct. 299, 97 L. Ed. 333 (1953). Here, the record indicates that the bankruptcy court sent notice to Heritage as a creditor on November 18, 2011. Therefore, Heritage was a known creditor in the bankruptcy action and received actual notice.

Pursuant to section 501 of the Bankruptcy Code, creditors may file a proof of claim, which permits the creditor to share in distributions of the bankruptcy estate. 11 U.S.C. § 501(a). A creditor must file a timely proof of claim in order to participate in any recovery. *In re Townsend Farms, Inc.*, 54 B.R. 8, 9 (Bankr. D.S.C. 1984). Section 101(5)(A) provides that a claim is a "right to payment, whether or not such right is reduced to judgment . . . [or] equitable." 11 U.S.C. § 101(5)(A). Section 101(5)(B) further provides that a claim is also a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(B). The term "creditor" means an "entity

16

that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Here, the record before the trial court and on appeal is insufficient to determine whether Heritage filed a timely proof of claim pursuant to section 501 during the bankruptcy action.

A debtor may remove property from the bankruptcy estate through the exemption process. 11 U.S.C. § 522(b). The debtor must file a list of property that the debtor claims as exempt. 11 U.S.C. § 522(*l*). Unless a party in interest files an objection to the debtor's claim of exemptions within 30 days, the property claimed as exempt on such list is deemed exempt. 11 U.S.C. § 522(*l*); *In re Bush*, 346 B.R. 523, 524-25 (Bankr. E.D. Wash. 2006) (citing *Taylor vs. Freeland & Kronz*, 503 U.S. 638, 643, 112 S. Ct. 1644, 118 L. Ed. 2d 280 (1992)). Such objection must be filed with the bankruptcy court. Also, a "debtor retains the right to sell, transfer, encumber, or use any property that is exempt." *Deveny v. Hadaller*, 139 Wn. App 605, 620, 161 P.3d 1059 (2007); 11 U.S.C. § 522.

Radabaugh asserts that the funds had been secured to Radabaugh by application of an exemption in the bankruptcy action. However, this assertion is made without citation to the record. RAP 10.3(a)(5). Radabaugh also asserts that the funds were listed as exempt property in the bankruptcy action. However, the portion of the record to which Radabaugh cites does not support this assertion. *See* CP at 98-99. Heritage argues that Radabaugh "attempted to claim the funds as one of their exemptions in the bankruptcy action." Br. of Resp't at 19. However, this assertion is also made without citation to the record. RAP 10.3(a)(5).

The parties made no argument to the trial court regarding exemption. However, the record does include the bankruptcy trustee's notice and motion for abandonment. That motion refers to

the funds as "[t]he asset . . . described on schedule C of the bankruptcy schedules."[12] CP at 90. Given the record before the trial court and on appeal, there is insufficient evidence to determine whether the funds were exempted from the bankruptcy estate. The record is also insufficient to determine whether Heritage filed a timely objection pursuant to 11 U.S.C. § 522.

A bankruptcy discharge releases a debtor from liability on debts and enjoins any creditor's effort to collect a discharged debt as a personal liability of the debtor. 11 U.S.C. § 727(b) and § 524(a)(1), (a)(2); *see also Heilman v. Heilman (In re Heilman)*, 430 B.R. 213, 218 (B.A.P. 9th Cir. 2010)). Section 524(a) provides that a discharge granted in a bankruptcy case:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727. . . of this title, whether or not discharge of such debt is waived;

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a).

Section 727(b) provides that, except for non-dischargeable debts listed in § 523(a), a discharge under § 727(a) discharges a debtor from all debts that arose before bankruptcy. 11 U.S.C. § 727(b); *Beezley v. Cal. Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1434 (9th Cir. 1993). This discharge occurs regardless of whether, in the instance of a no-asset chapter 7 case, as was the case here, the debt was listed in a debtor's schedules. 11 U.S.C. § 727(b); *Beezley*, 994 F.2d at 1434. The granting of a discharge is effective immediately upon the entry of an order of discharge. 11 U.S.C. § 727.

---

[12] Schedule C is property claimed as exempt by the debtor.

However, a discharge in bankruptcy does not extinguish the debt itself. 11 U.S.C. § 524(e). Rather, it releases a debtor from personal liability for the debt. 11 U.S.C. § 524(a)(2). The debt still exists and may be collected from any other entity that might be liable. 11 U.S.C. § 524(e); *Patronite v. Beeney (In re Beeney)*, 142 B.R. 360, 363 (B.A.P. 9th Cir. 1992).

Here, the United States Bankruptcy Court granted Radabaugh a discharge under 11 U.S.C. § 727. The parties agreed before the trial court that Heritage's judgment against Radabaugh was discharged by the bankruptcy court. Therefore, the discharge released Radabaugh from personal liability on the debt and enjoined Heritage's effort to collect the debt as a personal liability of Radabaugh. 11 U.S.C. § 727(b). Accordingly, the trial court, based on the record before it, abused its discretion in concluding that Heritage is the owner of the funds.

3.    There Was No Assignment Of Funds

The trial court also concluded that Heritage "owned" the funds because Radabaugh legally or equitably assigned the funds to Heritage. CP at 124. Even accepting the majority's position that the trial court's findings of fact are verities on appeal because Radabaugh did not assign error to them, there are no findings of fact to support the trial court's conclusion, and the trial court erred in concluding that Radabaugh legally or equitably assigned the funds to Heritage.

a.    No findings of fact supports the conclusion that Radabaugh legally or equitably assigned the funds to Heritage

We review de novo whether a trial court's findings support its conclusions of law. *Shelcon Constr. Grp., LLC v. Haymond,* ___ Wn. App. ____, 351 P.3d 895, 901 (2015); *Gamboa v. Clark,* 183 Wn.2d 38, 44, 348 P.3d 1214 (2015); *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC,* 176 Wn. App. 335, 342, 308 P.3d 791 (2013), *review denied,* 179 Wn.2d 1011 (2014).

The only finding that the trial court made with regard to whether Heritage or Radabaugh was entitled to the funds stated:

19

> 6. On October 14, 2011, the Court entered a judgment in favor of Heritage and against the Radabaughs for the principal sum of $20,600.00, representing the net value of materials and services provided and rendered by Heritage to the Radabaughs under the contract.

CP at 123. The finding that Heritage's judgment against Radabaugh arising from contract does not support the trial court's conclusion that Radabaugh legally or equitably assigned the funds to Heritage. Therefore, the trial court erred in concluding that Radabaugh legally or equitably assigned the funds to Heritage.

  b. No legal assignment

To create a valid and binding assignment, "[n]o particular words of art are required." *Amende v. Town of Morton*, 40 Wn.2d 104, 106, 241 P.2d 445 (1952). However, the assignor must intend to transfer and invest property in the assignee. *Carlile v. Harbour Homes, Inc.*, 147 Wn. App. 193, 208, 194 P.3d 280 (2008), *review granted in part*, 166 Wn.2d 1015 (2009). The intent to deprive the assignor of control must be clear. *Amende*, 40 Wn.2d at 106.

Heritage argues that because the parties' original contract for home repairs required Radabaugh to forward all insurance proceeds to Heritage, Radabaugh evidenced an intention to assign the funds held in the court registry to Heritage. The contract included a clause that stated, "'[Radabaugh agrees] to immediately forward all draws issued as partial or full payment regarding this claim.'" CP at 36. Additionally, the contract stated that Radabaugh authorizes and directs Grange Insurance Association to "'pay [Heritage] directly and/or include [Heritage] on all draws issued as partial or full payment regarding this claim.'" CP at 37.

However, after the trial giving rise to Heritage's judgment against Radabaugh, the trial court concluded that Radabaugh's obligation to pay was never triggered under the contract with Heritage. That conclusion has never been challenged by any party. Because Radabaugh was not obligated to pay Heritage under the contract, Radabaugh did not evidence an intention to assign

the funds to Heritage. Furthermore, the stipulated motion and order directing Grange Insurance Association to deposit the funds into the court registry acknowledged that the parties disputed to whom the funds properly belonged. Because the parties disputed ownership of the funds, Radabaugh could not have assigned to Heritage funds which it did not own. Therefore, Radabaugh did not assign the funds to Heritage under the parties' original contract.

### c. No equitable assignment

To accomplish an equitable assignment, "an assignor must have intended to transfer a present interest in the debt or fund and, pursuant to such intention, must have made an absolute appropriation of the thing assigned, relinquishing all control or power of revocation over it to the use of the assignee." *Mercantile Ins. Co. of Am. v. Jackson*, 40 Wn.2d 233, 236, 242 P.2d 503 (1952). An equitable assignment may be accomplished orally or by writing. *Mercantile Ins. Co.*, 40 Wn.2d at 236. However, the words or transactions must indicate "an intent, on the one side, to assign, and an intent, on the other, to receive . . . assuming there is a valuable consideration." *Mercantile Ins. Co.*, 40 Wn.2d at 236. The language utilized and the surrounding circumstances must "plainly reveal[] an intent on the part of the assignor to make an actual or constructive transfer to the assignee of a present interest." *Robert Wise Plumbing & Heating, Inc. v. Alpine Dev. Co.*, 72 Wn.2d 172, 178, 432 P.2d 547 (1967).

Heritage contends that even if the parties' contract is unenforceable, the contract provisions in which Radabaugh agreed to pay Heritage or authorized Grange Insurance Association to pay Heritage for work performed still evidence Radabaugh's intention to equitably assign the funds to Heritage. Br. of Resp't at 16. But if Radabaugh never had a duty to pay under the contract, then Radabaugh never intended to assign the funds to Heritage.

21

In support of its position, Heritage claims that once the funds were deposited in the court registry, "the only dispute remaining" was regarding the value of Heritage's work performed. Br. of Resp't at 17. But the record does not support this argument. Because the stipulated motion and order directing Grange Insurance Association to deposit the funds into the court registry acknowledged that the parties disputed to whom the funds properly belonged, a dispute regarding ownership of the funds remained. Thus, Radabaugh clearly did not intend to assign the funds to Heritage because Radabaugh still maintained an ownership claim to the funds.

The trial court dispersed the funds held in the court registry because "Radabaugh legally or equitably assigned the funds to Heritage." CP at 118. Because Radabaugh did not assign the funds to Heritage, Heritage did not own the funds prior to Radabaugh's bankruptcy action. Thus, the trial court erred when it determined that Heritage was entitled to the funds because Radabaugh assigned the funds to Heritage.

Furthermore, the parties did not agree that the trial court could disburse the funds to whomever prevailed at trial, nor did either party actually prevail at trial. *See* CP at 29-30; CP at 47 ("The Court further rules that the parties have each failed to prevail on their primary claims . . . Therefore, there is no prevailing party in this litigation."). The judgment did not provide that Heritage was entitled to the funds. Thus, it does not logically follow that Radabaugh assigned the funds to Heritage.

The trial court may only exercise its discretion to disperse funds held in a court registry to the party entitled to the funds. The trial court exercised its discretion on an untenable ground because its conclusion that Heritage "owned" the funds as a result of Radabaugh legally or equitably assigning the fund to Heritage is not supported by any finding of fact and Heritage was not entitled to the funds. Therefore, the trial court abused its discretion.

C.     ATTORNEY FEES

It follows that I disagree with the majority's award of attorney fees on appeal to Heritage. Because I would hold that the trial court erred, Heritage is not the prevailing party and would not be entitled to attorney fees.

The trial court abused its discretion when it concluded that Heritage "owned" the funds because Radabaugh legally or equitably assigned the funds to Heritage. Therefore, I would reverse and remand for the trial court to determine which party is rightfully entitled to the funds held in the court registry.

_____
Lee, J.