[No. 9879–2–II.   Division Two.   June 6, 1988.]

PACIFIC NORTHWEST LIFE INSURANCE COMPANY, *Respondent,* v. RONALD TURNBULL, ET AL, *Defendants,* RICHARD L. NELSON, ET AL, *Appellants,* EARL DEAN WILLIAMS, *Respondent.*

*Robert D. Mitchelson, Lee, Mitchelson & Yoseph, Jordan M. Hecker, Kenton L. Longley,* and *Watson & Longley,* for appellants Nelson, et al.

*Christine Kitchel, Susan M. Hammer, Deborah A. Elvins, Peter R. Jarvis,* and *Stoel, Rives, Boley, Jones & Grey,* for respondent Pacific Northwest Life Insurance Co.

*Zachary H. Stoumbos* and *Landerholm, Memovich, Lansverk & Whitesides,* for respondent Williams.

PETRICH, J.—This case concerns the purchase and sale of real property later found unsuitable for commercial development because of its prior use as a garbage dump.

The property was sold September 1980 by a land sale contract for the agreed sum of $385,000. In Pacific Northwest Life Insurance Company's suit for damages initiated 3 years later, the trial court ruled that the sellers, Roger L. Turnbull and Ronald Turnbull and their respective wives, had fraudulently concealed from and misrepresented the condition of the property to the purchasers, Ronald L. Smith and Pacific Northwest Life Insurance Co. (Pacific).[1] The trial court rejected Pacific's claim of fraudulent concealment and a Consumer Protection Act violation against Richard L. Nelson, the real estate broker, and Nicholas M. Torres, a real estate agent in Nelson's employ. However, the court found that both Nelson and Torres were liable to Pacific on a theory of negligence.

After the sale, but before the lawsuit was filed, Ronald Turnbull and his wife assigned their seller's interest, amounting to 3/16 of the total then remaining balance on

---

[1]Prior to the lawsuit, Pacific had acquired Smith's interest in the property.

the contract, to the Williams Trust for valuable consideration. After the lawsuit was filed, all of the remaining payments on the contract were paid by Pacific into the registry of the court. These payments totaled $198,622.44.

Damages were assessed against the Turnbulls, Nelson and Torres in the amount of $301,438.08. Attorney's fees and costs totaling $119,510.54 were awarded to Pacific against the Turnbulls.[2] The court awarded to the Williams Trust 3/16 of the funds paid into court by Pacific, based on its determination that Pacific was equitably estopped from raising its defense under the contract against Williams. The trial court allocated the sums paid into court to the attorney's fees awarded to Pacific, and applied the residual of the fund to the damage award. By this means, the final judgment was entered against the Turnbulls, Nelson and Torres in the amount of $259,567.89. Nelson and Torres appeal, challenging the court's determination of liability on a theory of negligence; the allocation of funds from the registry of the court to Pacific's attorney's fees; and the award of 3/16 of the funds in the registry of the court to Williams. Pacific also appeals the trial court's award of 3/16 of the funds in the registry of the court to Williams and cross-appeals the trial court's dismissal of its fraud and consumer protection claims against Nelson and Torres. We affirm the judgment in favor of Pacific (modified as may be necessary because of our reversal of the award to Williams); affirm the dismissal of Pacific's fraud and consumer protection claims; and reverse the trial court's award of 3/16 interest to the funds paid into court as installment payments under the contract.

### FACTS OF THE CASE

The Turnbulls owned property located in Clark County. The property had been used as a gravel pit, resulting in a hole covering approximately 75 percent of its area. From

---

[2]Roger Turnbull died after this suit was initiated and his personal representative was substituted in his stead.

1970 to 1974, Turnbull operated a garbage dump and landfill site on the property. At the time the garbage and landfill operations were halted, the pit was almost completely filled.

In 1979, Turnbull listed the property with Nelson's realty company for the purposes of selling it. Ron Smith became interested in the property for commercial development. Turnbull, Nelson and Torres each represented to Smith that the property would be suitable for commercial development. Prior to the sale, Smith approached Pacific about purchasing the property and developing it commercially. Pacific agreed to purchase the property from Turnbull as a cotenant with Smith.

During negotiations, Turnbull did not disclose the prior uses of the property to Smith. Nelson and Torres each had suspicions about the condition of the property. However, neither Nelson nor Torres disclosed these suspicions to Smith or Pacific, nor did they further investigate their suspicions regarding the type of landfill used on the property.

Fourteen months after the sale, Pacific had cumulative knowledge of a serious problem with regard to the property. From late 1981 until May of 1983, Pacific attempted to resell the property. In May 1983, Pacific received a written study which detailed the extent of the problems on the property. The report concluded that the property was not suitable for commercial development due to soil instability caused by improper landfill. As a result of this report, Pacific filed suit seeking damages from Turnbull, Nelson and Torres.

Some time after the sale but long before suit was initiated, Williams, without Pacific's knowledge, became the assignee of Ronald Turnbull's interest in the contract and received its proportionate share of the installment payments up until the time the lawsuit was started.

## NELSON AND TORRES APPEAL

Nelson and Torres argue that the trial court erred in holding them liable for failure to investigate the property's

condition. They contend that a broker is under no duty to investigate unknown defects, particularly where the purchaser is a sophisticated commercial developer.

Washington courts have found that a seller's broker has a duty to the buyer. "The underlying rationale of [a broker's] duty to a buyer who is not his client is that he is a professional who is in a unique position to verify critical information given him by the seller. His duty is to take reasonable steps to avoid disseminating to the buyer false information." *Hoffman v. Connall,* 108 Wn.2d 69, 75, 736 P.2d 242 (1987) (quoting *Tennant v. Lawton,* 26 Wn. App. 701, 706, 615 P.2d 1305 (1980)). Furthermore, the broker has the duty to employ a reasonable degree of effort and professional expertise to confirm or refute information from the seller which he should know is pivotal to the transaction from the buyer's perspective. *Tennant v. Lawton, supra.* The broker also has the duty to disclose all material facts not readily ascertainable to the buyer. *McRae v. Bolstad,* 32 Wn. App. 173, 176–77, 646 P.2d 771 (1982).

When evaluating Nelson's and Torres's conduct in this case, it is important to characterize the negligence of the parties on which the court relied in finding liability. It was not a breach of a duty to investigate and determine the suitability of the site for the purchaser's intended use. We do not intend to impose this duty on broker/realtors. Rather, the court in an unchallenged finding found Nelson and Torres had "repeated and reinforced representations made by the seller concerning the ability of the property to sustain commercial development and its suitability . . . without verifying or confirming the information, and failed to discover the true state and condition of the property . . ." Furthermore, negligence was found because of representations by Torres that "the property was suitable for commercial development." (Unchallenged conclusion of law 8, which is really a finding of fact.)

The trial court's theory for finding liability was negligent misrepresentation. Although the court concluded that Nelson and Torres were not liable for misrepresentation, we

believe that this conclusion was meant to refer to fraudulent misrepresentation for which the sellers were found liable. Therefore, the trial court properly premised Nelson's and Torres's liability on their failure to confirm the seller's statements regarding commercial suitability prior to repeating them to the buyer. *Hoffman v. Connall, supra; Tennant v. Lawton, supra.*

Nelson and Torres next assign error to the trial court's conclusion that Smith and Pacific were not contributorily negligent in failing to discover the defect. They argue that Pacific, as a sophisticated purchaser, should have independently investigated the suitability of the site. They contend that Pacific and Smith had both the opportunity and resources to discover the landfill defect, and, in failing to do so, they were contributorily negligent.

■ The unchallenged findings of fact establish that there was nothing to raise the suspicion of the purchasers regarding the condition of the soil. The trial court found that the defect in the property was not readily apparent from a surface inspection. The court further found the land was filled with garbage up to 22 feet in some places, thus making the soil insufficient to support commercial development. The court found that the defect was such that it was not discoverable without expensive soil tests. Furthermore, Smith testified that he ordinarily did not order such tests prior to a purchase unless circumstances warranted otherwise. Therefore, the unchallenged findings establish that Pacific and Smith acted properly under the circumstances.

■ Nelson and Torres next argue that the trial court erred in failing to reduce Pacific's judgment for Pacific's failure to mitigate its damages. However, Nelson and Torres failed to plead or argue this issue at trial. Failure to raise an issue before the trial court generally precludes a party from raising it on appeal. *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 240, 588 P.2d 1308 (1978). Therefore, we refuse to address this issue.

Nelson and Torres next argue that the trial court improperly applied the funds held by the court to the

award of attorney's fees against Turnbull first, and the award of damages second. Nelson and Torres contend that the money held by the court should have been applied to the joint judgment first, for which they would then get credit as joint tortfeasors. Nelson and Torres submit that the trial court's approach to apportionment results in them being indirectly liable for Pacific's attorney's fees.

Generally, a court which has custody of funds has the authority and the duty to distribute the funds to the party or parties who show themselves entitled thereto. *Wilson v. Henkle,* 45 Wn. App. 162, 169, 724 P.2d 1069 (1986). Such a court

> has the power and the responsibility of protecting the fund and of disposing of it in accordance with the applicable principles of law and equity for the protection of the litigants and the public whose interests are affected by the final disposition thereof. The court is said to be free, in the discharge of that duty and responsibility, to use broad discretion in the exercise of its powers so as to avoid an unlawful or unjust result.

*Wilson,* 45 Wn. App. at 169 (citing *Market St. Ry. v. Railroad Comm'n,* 28 Cal. 2d 363, 367, 171 P.2d 875, 878 (1946)). A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons. *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 77, 684 P.2d 692 (1984). Although unusual, apportionment of court–held funds by the trial court is not unheard of. In *Kruegel v. Kitchen,* 33 Wash. 214, 74 P. 373 (1903), the Supreme Court approved of a similar disposition of funds in the court registry. In *Kruegel,* the plaintiff attempted to enforce a lien for materials furnished by him in the construction of a building owned by defendants. Defendants continued to make payment on the material into the court registry. In granting judgment against the plaintiff for costs, the trial court ordered that the judgment should be paid out of the deposit in court. The Supreme Court, in affirming the trial court's decision, stated that "[i]n the absence of any positive rule of law, we see no just

reason why a court may not exercise its discretion in a matter of this kind." *Kruegel,* 33 Wash. at 219.

Furthermore, the trial court's handling of the fund would seem to have furthered the purpose of full compensation for the injured party. "The cornerstone of tort law is the assurance of full compensation to the injured party." *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 236, 588 P.2d 1308 (1978). The purpose of awarding damages is to make the injured party whole. *DeNike v. Mowery,* 69 Wn.2d 357, 358, 418 P.2d 1010 (1966). Since it is likely that Turnbull was insolvent at the time of the proceedings, the trial court's allocation of the funds enhanced Pacific's ability to recover the entire judgment against both tortfeasors. While Nelson and Torres are faced with the difficult prospect of recovering contribution from Turnbull, as a joint tortfeasor, the burden properly lies with them.

Since the trial court's actions violated no positive rule of law and furthered the policy of making the plaintiff whole, we hold that there has been no abuse of discretion by the trial court. Therefore, the apportionment of funds as per the trial court's ruling is affirmed.

The trial court concluded that Pacific, by virtue of its continued payment on the contract, was equitably estopped from asserting the defense of fraud against Williams. Nelson, Torres, and Pacific contend that Pacific did not act in a manner to create an equitable estoppel and thus the defense of fraud should apply to Williams as well as Turnbull.

Ordinarily, an assignee takes a contract subject to any defenses or setoffs that an account debtor may have against a creditor/assignor. *Federal Fin. Co. v. Humiston,* 66 Wn.2d 648, 651, 404 P.2d 465 (1965). However, a debtor, by his representation, or conduct, may. estop himself to assert against the assignee such defenses as would have been otherwise available to him against the assignor. *Nelson v. Bailey,* 54 Wn.2d 161, 168, 338 P.2d 757, 73 A.L.R.2d 1400 (1959).

■■ Upon review of the record, we hold that Pacific was not estopped from raising the defense of fraud against the assignee Williams. The trial court found that continued payments under the contract after discovery of the defect was an inconsistent act. We disagree. Continued payments under the contract were appropriate in this case since the amount actually due Turnbull could not have been resolved without a final decision by a trial court. Therefore, Pacific chose a reasonable course of action designed to protect its rights and interest in the subject property. Furthermore, Pacific's continued payment was not designed to induce reliance on the part of Williams since Pacific was not aware of Williams's interest in the contract prior to litigation. Since Pacific did not act inconsistently with its later claim of fraud, we conclude that Pacific is not estopped from asserting its claim against the Williams Trust. Therefore, the decision of the trial court is reversed and the 3/16 interest of the contract payments deposited into the registry of the court, originally awarded to Williams, will now be awarded to Pacific and applied to the joint liability of Turnbull, Nelson and Torres.

PACIFIC'S CROSS APPEAL

On its cross appeal, Pacific argues that the trial court erred by concluding that Nelson and Torres were not liable for fraud or for violation of the Consumer Protection Act. We are not persuaded by either argument.

■ The essential elements of fraud are (1) representation of a distinct fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) its intent that it should be acted on by the person to whom it was made, (6) ignorance of its falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth or representation, (8) his right to rely on it, and (9) his consequent damages. *Williams v. Joslin,* 65 Wn.2d 696, 697, 399 P.2d 308 (1965). The burden is upon the claimant to prove the existence of all the essential and

necessary elements of fraud. *Beckendorf v. Beckendorf,* 76 Wn.2d 457, 462, 457 P.2d 603 (1969).

In the present case, the trial court did not make findings regarding some of the elements of fraud, most notably the knowledge and intent of Nelson and Torres. Furthermore, Pacific did not assign error to this lack of findings. In the absence of a finding of fact on a disputed matter, the appellate court will imply a finding against a party having the burden of proof on that issue. *Rhodes v. Gould,* 19 Wn. App. 437, 441, 576 P.2d 914 (1978). Therefore, since Pacific had the burden to establish all elements of fraud, and there is an absence of some of these elements in the findings, we conclude that Pacific has failed to establish its action for fraud.

Pacific also argues that the trial court incorrectly held that the conduct of Nelson and Torres did not affect the public interest and, thus, did not violate the Consumer Protection Act.

In order to sustain an action under the Consumer Protection Act, a private party must establish among other things, that an unfair and deceptive act affects the public interest. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 784–85, 719 P.2d 531 (1986). Under *Hangman Ridge,* in analyzing the public interest requirement, the court must first determine whether the context of the act was "essentially a consumer transaction" or rather "essentially a private dispute." *Hangman Ridge,* 105 Wn.2d at 789–90. A transaction between a realtor and purchaser of property is considered a private dispute. *Hangman Ridge,* 105 Wn.2d at 789–90 (citing *McRae v. Bolstad,* 101 Wn.2d 161, 676 P.2d 496 (1984)).

A private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion. *Hangman Ridge,* 105 Wn.2d at 790. The following factors are indicia of an effect on public interest by private disputes:

(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the

public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?

*Hangman Ridge,* 105 Wn.2d at 790–91.

In the present case, from the findings of fact, it has not been established that the acts of Nelson and Torres affected the public interest per *Hangman Ridge.* In particular, in *Hangman Ridge,* the court noted that the plaintiffs "had a history of business experience" to the extent that they were "not representative of bargainers subject to exploitation and unable to protect themselves." *Hangman Ridge,* 105 Wn.2d at 794. Here, Smith, as well as Pacific, had sufficient sophistication to remove them from the class of bargainers subject to exploitation. Therefore, the trial court properly dismissed Pacific's claim under the Consumer Protection Act.

For the reasons stated above, we affirm the trial court's judgment against Nelson and Torres for negligence. Furthermore, we affirm the trial court's dismissal of Pacific's fraud and consumer protection claims. We reverse the trial court's award of 3/16 interest in the contract payments, deposited with the court, to Williams, and instead award this interest to Pacific as a portion of the trial court's overall damage award. Finally, having reversed the trial court's award to Williams, we reject its claim for attorney's fees on this appeal.

ALEXANDER, A.C.J., and WORSWICK, J., concur.

Review denied by Supreme Court October 4, 1988.