**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clientsfl/lawareports/.

THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| YEMESERACH GEBRESERALSE, | No. 82976-9-I |
| Appellant, | |
| v. | PUBLISHED OPINION |
| COLUMBIA DEBT RECOVERY, | |
| Respondent. | |

CHUNG, J. — Yemeserach Gebreseralse abandoned her lease. The lease included a provision forfeiting the security deposit under certain circumstances, including if the tenant abandons the lease and fails to give proper notice of termination. The landlord assigned the outstanding balance, consisting largely of unpaid rent, to Columbia Debt Recovery (CDR), who then sued Gebreseralse to collect. Gebreseralse conceded that she owed $4750 but argued that the $1400 security deposit should be applied to the debt. The district court agreed and entered a reduced judgment in favor of CDR, crediting the security deposit. CDR appealed to the superior court, which reversed and entered judgment for the full amount. On discretionary review, we agree with Gebreseralse. A landlord may not seek remedies under both the Residential Landlord-Tenant Act (RLTA), chapter 59.18 RCW, and retain a security deposit to cover damages for the same breach. We reverse the superior court and remand to the district court to reinstate its order and calculate the final judgment.

No. 82976-9-I/2

## FACTS

Gebreseralse is a single mother originally from Eritrea. In April 2017, she rented a unit in the Sunset Square Townhomes in Renton, Washington. She signed a one-year lease agreement for $1,400 month and paid a $1,400 security deposit. The lease agreement contained a provision governing return of the security deposit, which specified that the landlord could retain the deposit if the tenant terminated without proper notice:

> 5. Security Deposit Refund. Upon termination of Resident's right to occupy the premises, the security deposit shall be returned to Resident in accordance with the following terms and conditions:
> (a) All of the security deposit will be retained by Owner if Resident fails to occupy the premises for the full term . . . or if Resident fails to give proper notice of termination of tenancy. In such events, the security deposit will not be returned to the Resident nor applied to charges for unpaid rent, cleaning, painting or damages, and such additional charges will become due and owing.
>
> . . . .
>
> Forfeiture or retention of the security deposit is not a release or waiver of Resident's obligation to pay all rents due or to pay for the costs of cleaning, painting, repairs or maintenance relating to Resident's occupancy which exceeded the security deposit, or any other charge or cost due hereunder. [Emphasis added.]

In a provision relating to termination of tenancy, the lease repeated that failure to provide proper advance notice of the termination would result in forfeiture of the security deposit:

> 7. Termination of Tenancy.
> (a) Unless terminated as provided herein, this lease shall be automatically renewed for successive terms of one month. Either party may terminate this lease at the end of the initial term or any successive term by giving written notice at least 20 days prior to the end of a month.
> (i) If Resident does not give at least twenty (20) days' notice as required herein, the security deposit shall be completely forfeited

2

> and not applied against any amounts owing by the Resident, and
> Resident shall be obligated for the next month's rent.
>
> (ii) If the Resident vacates the premises prior to the expiration of the
> lease, the security deposit will be completely forfeited and not
> applied against any amounts owing by the Resident, and
> Resident shall be obligated for the rental payments for the
> remainder of the term of the lease, or until the premises have
> been re-rented, whichever is less. [Emphasis in original.]

According to Gebreseralse, she noticed a number of problems when she first moved into the townhouse. By July 2017, an exterior door would not lock, and Gebreseralse discovered persistent dark mold. She was constantly worried about her children's well-being. Gebreseralse spoke with on-site management about the issues and was assured her concerns would be addressed. She did not, however, provide her complaints in writing.

Several months passed without remediation of the problems in the townhome. On October 16, 2017, Gebreseralse and her children moved out of the apartment without prior written notice to the landlord. At that time, Gebreseralse had not fully paid rent for September and October.

In November 2017, the landlord sent Gebreseralse a Statement of Security Deposit Accounts with an outstanding balance of $11,934.67. A second Statement of Security Deposit Accounts from December 2017 showed a revised balance of $4,750.[1] This accounting included a $1,400 charge labeled as "forfeited security," which the landlord claimed was for November rent. The townhome was re-rented in December 2017, so no further charges were assessed.

---

[1] The balance reflects $1,400 for October rent, $1,275 for September rent, $50 return check fee, $300 in outstanding utilities, $75 for carpet cleaning, $75 for apartment cleaning, $25 for maintenance repairs, $150 for painting, and $1,400 for "forfeited security."

No. 82976-9-I/4

Gebreseralse did not pay the outstanding balance, so the landlord assigned her account to CDR, a collection agency, in January 2018. In August 2019, CDR filed a complaint in King County District Court, seeking to collect the $4,750, plus interest and attorney fees and costs.

Gebreseralse then initiated a lawsuit in King County Superior Court (KCSC) alleging that CDR violated the federal and state consumer credit protection laws in 15 U.S.C. § 1692 and chapter 19.16 RCW, and the state Consumer Protection Act, chapter 19.86 RCW. That case was removed to federal court and was stayed pending the outcome of CDR's state court collection action to determine the amount owed by Gebreseralse.[2]

CDR filed a motion for summary judgment in district court. In response, Gebreseralse conceded that she owed money to CDR, but disputed the amount. Gebreseralse argued she was entitled to credit for her security deposit because Washington law does not permit forfeiture of the deposit in its entirety. Gebreseralse requested the court grant partial summary judgment to CDR in the amount of $3,350, their requested amount less her $1,400 security deposit. The district court agreed with Gebreseralse and entered judgment for CDR for $3,350, plus interest, attorney fees and costs.

CDR filed an appeal pursuant to RALJ 4.1(d) (RALJ appeal) with the King County Superior Court. The court reversed the district court's order, awarding CDR the full $4,750 and attorney fees. Gebreseralse moved for discretionary review of the superior court's decision under RAP 2.3(d)(3) and (4). After a commissioner of this court denied

---

[2] Gebreseralse v. Columbia Debt Recovery, LLC, 2020 WL 12812297 (2020). Case No. 2:19-CV-1909 is pending in the U.S. District Court for the Western District of Washington.

4

No. 82976-9-I/5

review, a panel of judges granted Gebreseralse's motion to modify and accepted review.

ANALYSIS

I.    Is CDR the Appropriate Party?

As a threshold issue, CDR contends that Gebreseralse's dispute over her security deposit should have been pursued against the landlord under RCW 59.18.280(2). According to CDR, it "cannot be held vicariously liable for the property manager's decision to retain the security deposit pursuant to the lease." However, CDR is an assignee of the landlord's claim.

"An assignee 'steps into the shoes of the assignor, and has all the rights of the assignor.' " Carlile v. Harbour Homes, Inc., 147 Wn. App. 193, 208, 194 P.3d 280 (2008) (quoting Puget Sound Nat'l Bank v. State Dep't of Revenue, 123 Wn.2d 284, 292, 868 P.2d 127 (1994)). Under RCW 4.08.080, an assignee may sue and maintain an action against the debtor, provided "[t]hat any debtor may plead in defense as many defenses, counterclaims and offsets, whether they be such as have heretofore been denominated legal or equitable, or both, if held by him against the original owner, against the debt assigned." See also Pacific Nw. Life Ins. Co. v. Turnbull, 51 Wn. App. 692, 700, 754 P.2d 1262 (1988) (generally, assignee takes a contract subject to any defenses or setoffs the account debtor may have against the creditor/assignor);[3] Nancy's Prod., Inc. v. Fred Meyer, Inc., 61 Wn. App. 645, 650, 811 P.2d 250 (1991)

---

[3] This general rule is subject to an exception when the debtor's representation or conduct may amount to equitable estoppel preventing assertion of defenses against the assignee that would otherwise be available against the assignor. Nelson v. Bailey, 54 Wn.2d 161, 168, 338 P.2d 757 (1959); Pacific Nw. Life Ins. Co., 51 Wn. App. at 700. CDR does not raise the issue of equitable estoppel.

5

No. 82976-9-I/6

("[W]hen setoff is asserted against an assignee, it diminishes or defeats the assignee's claim."). As the assignee of the landlord's claims, CDR is subject to both the rights and defenses applicable to the landlord. Thus, Gebreseralse's claim is properly asserted against CDR.

II.      Forfeiture of the Security Deposit

Gebreseralse argues that the superior court improperly reversed the district court and erred by refusing to credit her $1,400 security deposit against the $4,750 assessed against her for early termination of her lease. This court's review of a superior court decision reviewing a district court decision is governed by RALJ 9.1(e). State v. Jim, 156 Wn. App. 39, 41, 230 P.3d 1080 (2010). The appellate court "review[s] the district court's decision to determine whether that court committed any errors of law, accepting its factual determinations that are supported by substantial evidence and reviewing alleged errors of law de novo." Id. at 41. The district court granted summary judgment, and we review orders on summary judgment de novo. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016).  Additionally, the issue here—the interpretation and application of the Residential Landlord-Tenant Act (RLTA), chapter 59.18 RCW—is a question of law reviewed de novo. Silver v. Rudeen Mgmt. Co., Inc., 197 Wn.2d 535, 542, 484 P.3d 1251 (2021).

When interpreting statutes, the court's objective "is to ascertain and carry out the Legislature's intent." Id. "The RLTA specifies numerous duties, rights, and remedies for landlords and tenants engaged in residential lease agreements." Id. at 543. The RLTA creates remedies for tenants to protect their interests from the landlord's "upper hand," especially during times of housing shortages. Id. at 548 (quoting Thomas Bothwell,

6

Comment, <u>Washington Tenant Remedies and the Consumer Protection Act</u>, 10 GONZ. L. REV. 559, 559 (1975)). As such, the RLTA is a remedial statute that must be construed liberally to accomplish the purpose for which it was enacted. <u>Silver</u>, 197 Wn.2d at 548. As a statute in derogation of the common law, the RLTA is " 'strictly construed in favor of the tenant.' " <u>Randy Reynolds & Assocs. v. Harmon</u>, 193 Wn.2d 143, 156, 437 P.3d 677 (2019) (quoting <u>Silver</u>, 197 Wn.2d at 548).

Among the most frequent landlord-tenant disputes are complaints of wrongful retention of damage and security deposits. <u>Silver</u>, 197 Wn.2d at 544. To this end, security deposits were subject to "new and significant regulation" when the RLTA was enacted. <u>Id.</u> at 544-45. For example, when a security deposit is required, the lease must specify, in writing, the terms and conditions under which the deposit may be withheld. RCW 59.18.260. "If all or part of the deposit may be withheld to indemnify the landlord for damages to the premises for which the tenant is responsible, the rental agreement shall be in writing and shall so specify." <u>Id.</u> The landlord must also provide a written checklist or statement describing the condition of the premises, which must be signed and dated by both landlord and tenant. <u>Id.</u> And the deposit cannot be withheld for normal wear and tear. <u>Id.</u>

Further underscoring the special nature of security deposits, the court in <u>Silver</u> stated, "A security deposit is the tenant's personal property, which the landlord holds in trust as security for the tenant's performance under the lease." 197 Wn.2d at 549. The landlord must deposit the funds in a trust account maintained for the purpose of holding security deposits for tenants. RCW 59.18.270. "Under the RLTA, the tenant's deposit provides security for the performance of the tenant's obligations under the lease, but

'[n]o part of the deposit belongs to the landlord unless and until the tenant breaches.' "

Silver, 197 Wn.2d at 545 (quoting 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.53, at 398 (2d ed. 2004)). After termination or abandonment of the premises, the landlord has twenty-one days to give "a full and specific statement of the basis for retaining any of the deposit." RCW 59.18.280. If a tenant causes only ordinary wear and tear, there is no breach of their duty, and they are entitled to full refund of the deposit. Silver, 197 Wn.2d at 549.

Where the landlord fails to comply with the RLTA's deposit provisions, the statute provides for attorney costs and fees and double damages if the violation is willful. Id. at 548-49; RCW 59.18.280(2). The RLTA also contains an anti-waiver provision, prohibiting leases from contracting away the rights established by the statute. RCW 59.18.230(1). These provisions all "demonstrate the importance of statutes that impose strict obligations and meaningful remedies to hold landlords accountable to respecting tenants' rights." Silver, 197 Wn.2d at 548. Such protections are "especially critical for renters experiencing poverty, for whom the security deposit and other moving expenses often exceed monthly income." Id. at 547.

Against this legal backdrop, Gebreseralse argues that the RLTA prohibits provisions that require tenants to forfeit the security deposit if they abandon a lease. She claims that forfeiture of the security deposit is improperly imposed as a remedy for abandonment of the lease outside the statutorily permissible remedies provided by the RLTA. We agree.

The RLTA establishes specific remedies available to the landlord when a tenant abandons the lease:

8

No. 82976-9-I/9

> (1) If the tenant defaults in the payment of rent and reasonably indicates by words or actions the intention not to resume tenancy, the tenant shall be liable for the following for such abandonment: PROVIDED, That upon learning of such abandonment of the premises the landlord shall make a reasonable effort to mitigate the damages resulting from such abandonment:
>
> (a) When the tenancy is month-to-month, the tenant shall be liable for the rent for the thirty days following either the date the landlord learns of the abandonment, or the date the next regular rental payment would have become due, whichever first occurs.
>
> (b) When the tenancy is for a term greater than month-to-month, the tenant shall be liable for the lesser of the following:
>
> (i) The entire rent due for the remainder of the term; or
>
> (ii) All rent accrued during the period reasonably necessary to rerent the premises at a fair rental, plus the difference between such fair rental and the rent agreed to in the prior agreement, plus actual costs incurred by the landlord in rerenting the premises together with statutory court costs and reasonable attorneys' fees.

RCW 59.18.310. Thus, the statute allows the landlord financial recovery for rent that would otherwise be lost when a tenant abandons the lease, but prevents a windfall by requiring a landlord make reasonable effort to mitigate the damages.

In this case, the unit was rerented by December. The landlord assessed $1,400 for the rent accrued when the unit was vacant during month of November 2017, as allowed under RCW 59.18.310(1)(b)(ii). However, in addition to this accrued rent, the landlord also retained the $1,400 security deposit. This retained security deposit amounts to a double recovery and undermines the mitigation requirement of RCW 59.18.310(1) and the RLTA's clear intention to protect tenants.

To support its claim for forfeiture of the security deposit, CDR argues that early termination of a lease causes damages other than lost rent, including labor costs to schedule and manage cleaning and repairs, relisting and advertising, screening and interviewing new applicants, and executing a new lease. CDR characterizes the

9

retained security deposit as liquidated damages for these losses.[4] However, RCW 59.18.310(1)(b)(ii) already accounts for these costs by specifying that the tenant is liable for "actual costs incurred by the landlord in rerenting the premises together with statutory court costs and reasonable attorneys' fees." Because a landlord can already recoup these costs in addition to lost rent, subject to the mitigation requirement, forfeiture of the security deposit is unnecessary to remedy non-rent losses.

Finally, the cases cited by CDR do not support its claim that leases can contain provisions for nonrefundable security deposits upon abandonment of the lease, as neither addressed the issue. In Carlstrom v. Hanline, the lease stated that the deposit was non-refundable if the tenant moved out within the first six months of the lease. 98 Wn. App. 780, 782, 990 P.2d 986 (2000). The issue was whether the lease was ambiguous; the court was not asked to, and did not review the merits of the nonrefundable security deposit provision in the lease. Id. at 784. In Hammond v. Boatsman, the court reviewed only whether a notice to pay rent or vacate waived the right to sue for liquidated damages. 24 Wn. App. 24, 26, 600 P.2d 581 (1979). There was no discussion of nonrefundable security deposit provisions. The lease provided that the tenant was liable for liquidated damages equivalent to one month of rent if the tenant breached any term of the lease. Id. at 25. The landlord had kept the security deposit based on failure to properly clean the premises. Id. at 26.

---

[4] Liquidated damages clauses in contracts are sums of money agreed upon in advance as a reasonable forecast of just compensation for the harm caused by breach. Minnick v. Clearwire U.S. LLC, 174 Wn.2d 443, 449, 275 P.3d 1127 (2012). While the RLTA does not specifically prohibit liquidated damages, a landlord cannot pursue lost rent and damages for abandonment of a lease under RCW 58.19.310(1), in addition to liquidated damages for the same losses.

The RLTA already provides specific remedies for abandonment of the lease. Judge Laurel Gibson of the King County District Court properly determined that the forfeiture of the security deposit was not authorized where the landlord also sought damages under RCW 59.18.310(1)(b). Therefore, we reverse the superior court.

III.    Attorney Fees

CDR and Gebreseralse also both request fees under the terms of the lease. If applicable law allows a party to recover attorney fees in a court of limited jurisdiction, a party may recover on appeal to the superior court. RALJ 11.2(b); Unifund, CCR, LLC v. Elyse, 195 Wn. App. 110, 119, 382 P.3d 1090 (2016). We may award fees on appeal under the same circumstances. RAP 18.1(a); Unifund, 196 Wn. App. at 119.

Here, the lease provides: "In the event any action, suit or proceeding is instituted to enforce any provision contained herein. . . Resident shall be responsible for and shall pay as additional rent, all costs, expenses and attorney's fees incurred by Owner." While the language of the lease is unilateral, RCW 4.84.330 converts the term to a bilateral fee provision. When a lease provides for one party to receive attorney fees and costs incurred to enforce the provisions of the lease, "the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements." RCW 4.84.330.

The only issue on appeal is the validity of the lease provision forfeiting the security deposit upon abandonment of the lease. Gebreseralse is the prevailing party on this issue and entitled to her fees on appeal both in this court and, because we reverse the King County Superior Court's decision, on her RALJ appeal.[5]

_____

[5] Because we award fees under the terms of the lease, we need not address the other grounds raised by the parties.

11

We reverse the superior court's judgment in favor of CDR, including the award of attorney fees and costs. We remand to the superior court and direct it to vacate its judgment and remand to the district court to reinstate its order and to enter judgment, accounting for attorney fees awarded to CDR on the initial action and to Gebreseralse on both the RALJ appeal to the superior court and to this court pursuant to RAP 18.1(i).

_____
Chung, J.

WE CONCUR:

_____          _____