IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RYAN WILLIAMS, an Individual, | No. 87672-4-I |
| Respondent, | |
| v. | DIVISION ONE |
| LEROY CHRISTIANSEN, individually and on behalf of the marital community composed of LeRoy and "Jane/John Doe" Christiansen; STEVEN FUESTON, individually and on behalf of the marital community composed of Steven and "Jane/John Doe" Fueston; and CFW LLC, a Washington Limited Liability Company, | |
| Appellants, | |
| 6TH & D LLC, a Washington Limited Liability Company; 111TH AVE PUYALLUP LLC, a Washington Limited Liability Company; 128TH ST PUYALLUP LLC, a Washington Limited Liability Company; BLUE SKY LAND DEVELOPMENT LLC, a Washington Limited Liability Company; CLEAR CREEK PROPERTY LLC, a Washington Limited Liability Company; LR1 LLC, a Washington Limited Liability Company; PIONEER LAND DEVELOPMENT GROUP LLC, a Washington Limited Liability Company; and JOHN DOES 1-20, | UNPUBLISHED OPINION |
| Defendants. | |

BOWMAN, A.C.J. — Leroy Christiansen and Steven Fueston appeal the

trial court's ruling that CFW LLC's oral agreement with Scott Fueston to provide

services for CFW violated its operating agreement (OA). They also argue the court erred by denying their request for attorney fees. Because the oral agreement for services did not violate the terms of CFW's OA, we reverse and remand for the trial court to reclassify the payment to Scott[1] as a CFW expense. And because Christiansen and Fueston are the prevailing parties, the court should rule on their request for attorney fees on remand.

FACTS

In December 2012, Christiansen, Fueston, and Ryan Williams formed several limited liability companies (LLCs) to hold, develop, and sell real estate in Pierce County. CFW is one of those LLCs. The three members held equal one-third shares in CFW, and the LLC's OA identified each of them as "managers."[2] Christiansen and Fueston funded the development projects and Williams performed the day-to-day tasks related to managing and developing the real estate.

Williams struggled with his role at CFW. So, in 2016, he hired real estate development consultant Charles Sundsmo to help obtain plat approval of CFW's "Heritage Gardens" project.[3] Williams and Sundsmo orally agreed that in exchange for Sundsmo's services, Williams would pay him one-half of Williams' one-third share of the profits from the sale of Heritage Gardens. Williams

---

[1] For clarity, we refer to Scott Fueston by his first name and mean no disrespect by doing so.

[2] The first OA identified only Williams as a manager. Then, the members executed a second restated OA, naming all three as managers.

[3] The Heritage Gardens project involved the development of 94 residential lots on an eight-acre parcel of land.

explicitly told Sundsmo "not to contact" Fueston or Christiansen "at any time."

Sundsmo then "took over all work on the Heritage Gardens plat application."

Christiansen and Fueston eventually learned that Williams mismanaged

CFW, engaged in several unauthorized acts, and struggled with a substance use

disorder. In July 2018, they confronted Williams, who agreed to seek inpatient

substance use treatment. Williams completed treatment but continued to

mismanage CFW and show signs of substance use. As a result, on October 19,

2018, CFW removed Williams as a manager and Williams stopped doing any

work for the LLC. Still, he remained an equal member of CFW and retained his

one-third interest in its net profits.

At the time Williams stopped managing the day-to-day tasks for CFW, the

Heritage Gardens project was "nowhere near completion." So, Fueston

approached Sundsmo and asked him to complete the work. In exchange,

Fueston offered Sundsmo "15 [percent] of the profit upon the sale of Heritage

Gardens." Sundsmo agreed. The parties executed no written agreement.

Christiansen and Fueston also needed help managing other tasks

Williams had performed. Specifically, they needed someone to

> coordinate the meetings with government agencies, engineers and
> surveyors; coordinate and attend inspections; manage accounting,
> banking, insurance, and bonding obligations; run the construction
> site and coordinate with the contractor; coordinate the marketing,
> feasibility study, and sale of the property to its buyer; facilitate
> punch-list items after the sale; and supervise day to day company
> operations as directed by managers.

Fueston turned to his cousin, Scott, for help because Scott had

experience managing several multimillion dollar commercial and residential

3

properties. Scott agreed to perform the day-to-day operations for the Heritage Gardens project in exchange for "10 [percent] of the profit from any sales." Again, the parties executed no written agreement.

In May 2019, Williams sued Christiansen, Fueston, and several of their LLCs, including CFW. He alleged Christiansen and Fueston forced him out of the companies, engaging in conversion and fraud. He asked for an accounting of LLC assets and for a declaratory judgment determining ownership of the LLC units. Christiansen and Fueston counterclaimed, alleging breach of fiduciary duty, conversion, and unjust enrichment. They asked the court to declare that Williams is no longer a member of the LLCs and requested a full accounting of all the benefits Williams received.

The case proceeded to a bench trial before Judge Elizabeth Martin in September and October 2022. On November 10, 2022, the court entered findings of fact and conclusions of law. It concluded that Williams, Christiansen, and Fueston remained equal one-third members of all the real estate LLCs, including CFW. But that Christiansen and Fueston are the sole managers of the LLCs and that all actions taken by them since August 18, 2018 on behalf of the LLCs "are enforceable."[4] The court rejected Williams' claims of conversion and fraud and agreed with Christiansen and Fueston that Williams breached his fiduciary duty to the LLCs. Expecting that the parties would face additional issues in wrapping up the LLCs, the court retained jurisdiction "for further orders as may be required."

---

[4] Section 11 of CFW's OA authorizes the managers to conduct and manage the business and affairs of the LLC.

4

In November 2020, CFW sold the remaining real property in the Heritage Gardens project for $2,900,000. From those funds, it paid outstanding mortgages, liens, and other expenses. It then paid Sundsmo $81,000—15 percent of the net proceeds from the sale. And it paid Scott $54,000—10 percent of the net proceeds from the sale. But CFW did not disburse the remaining profits to its members. Instead, it held the profits in reserve, as it remained in arbitration with a third party.

In May 2022, Williams moved to disburse the remaining funds and dissolve CFW and asked for a final accounting. The court reassigned the case from Judge Martin to Judge Joseph Evans, who heard the motion. The court denied the motion to disburse the funds but ordered CFW to produce an accounting within 30 days. After receiving the accounting, Williams moved for reimbursement of his share of the $81,000 fee paid to Sundsmo and the $54,000 fee paid to Scott. Williams alleged the compensation was an impermissible transfer of his LLC membership interest.

At an August 26, 2022 hearing, the parties disputed the adequacy of the CFW accounting. Williams also accused Christiansen and Fueston of taking an interim distribution of profits in February 2022. Christiansen and Fueston denied taking interim distributions and told the court that CFW had about $350,000 remaining in its account and that the LLC was prepared to distribute $275,000 of that balance to the members. They proposed retaining $75,000 to cover ongoing litigation, insurance, and accounting services. The court questioned the CFW accounting, commenting that it could not "really trust the accounting that has

been provided by either side." As a result, the court appointed certified public accountant Brianne Taylor to conduct a neutral accounting. It said CFW would at first pay the costs of the neutral accounting but reserved the ultimate allocation of those costs for a later date.

In December 2022, Taylor completed the neutral accounting. And Scott and Sundsmo both filed declarations describing the work they performed for CFW. Then, on December 22, 2022, the court held another hearing. It ordered CFW to distribute all but $10,000 of its remaining profits to the three members. But it reserved ruling on Williams' request for reimbursement of the compensation paid to Sundsmo and Scott.

On May 26, 2023, Williams filed a brief and a declaration in support of his request for reimbursement of his share of the fees CFW paid to Sundsmo and Scott. Williams argued that the oral agreements with Sundsmo and Scott were impermissible under the OA. And, according to Williams, the payment structure amounted to an impermissible transfer of his LLC member interest. Christiansen and Fueston responded that nothing in the OA requires written agreements for retaining professional services. And they argued that the compensation for services did not amount to a transfer of Williams' interest in the LLC. They also argued that Williams should bear the costs of the neutral accounting and asked for an award of attorney fees.

The court held a hearing to resolve the issues on June 22, 2023. Christiansen, Fueston, Sundsmo, and Scott all appeared at the hearing prepared to testify. But, after some discussion, the court decided it would look to the

parties' declarations to determine the facts. It told the parties, "[W]e're going to stick to that argued in the file" and directed them to "go to the legal issues." As a result, no witnesses testified.

The parties argued about whether the payment structure to Sundsmo and Scott amounted to an impermissible transfer of Williams' interest in the LLC. And they argued about whether the OA mandated written contracts to bind the LLC. During the discussion, the court referred to Judge Martin's 2020 post-trial findings of fact and noted:

> Essentially, the law of the case, at this point, is if it's not in writing, it's essentially disputed, and that's where we're at. I think there are some exceptions in some things that we can look at, but for the most part, the previous rulings and what [Judge Martin] wrote out in her decision was that if it wasn't in writing, it wasn't verifiable.

On August 25, 2023, Judge Evans issued his written "Ruling" on "proceed distribution, costs and fees," including findings of fact and conclusions of law. The court concluded that CFW's payment to Sundsmo did not violate the OA. It reasoned that the "initial agreements and designated services of Mr. Sundsmo were created with the knowledge of Mr. Williams while he was a co-equal manager of the partnerships." As a result, "the work is and was necessary, and the fees paid do not violate section 12 of the [OA]." But it concluded that "insufficient documentation, agreement and specification has been presented as to the ultimate contributions and contractual obligations of Scott," so "the agreement with Mr. Scott Fueston was in violation of section 12, section 13, and section 19 of the [OA] that was initially entered into by the three principal

7

partners." It ordered that any payment to Scott was the sole responsibility of Christiansen and Fueston. The court also ruled that Christiansen and Fueston would equally split the costs of the neutral accounting, reasoning that "the delay," "nature of the disclosures," and "contributory conduct of both parties" necessitated "independent accounting." And it found that "neither party is the substantially prevailing party" and denied all requests for attorney fees.

Christiansen, Fueston, and CFW moved for reconsideration. On September 29, 2023, Judge Evans held a hearing on the motion. Christiansen, Fueston, and CFW questioned why the court concluded the agreement with Sundsmo did not violate the OA but a virtually identical agreement with Scott did. The court explained:

> [T]he difference, Counsel, to be very clear, is that there was an agreement of all of the original managers about the fact that Sundsmo was going to be involved in the project. The difference when you include [Scott] is that [Scott] is said to have done all this work. Maybe he did work/maybe he didn't, but the reality of the situation is you have a familial relationship, first of all. Second of all, you have the question of no documentation about the hours . . . , and that is the reason why the ruling was initially made, Counsel.

The court denied the motion for reconsideration.

Christiansen, Fueston, and CFW appeal.

ANALYSIS

Christiansen, Fueston, and CFW argue that the trial court erred by concluding that CFW's compensation agreement with Scott violated the OA. They also argue the trial court erred by refusing to award attorney fees below

8

and ask for an award of attorney fees on appeal.[5] We address each argument in turn.

1. Payment to Scott

Christiansen, Fueston, and CFW challenge the court's conclusion that "any payment to [Scott] is the sole responsibility of [Christiansen] and [Fueston] and cannot be equally attributed to [Williams]." Williams argues that CFW's agreement with Scott was invalid under the OA.

We review a trial court's order disbursing funds for an abuse of discretion. *Pac. Nw. Life Ins. Co. v. Turnbull*, 51 Wn. App. 692, 699, 754 P.2d 1262 (1988) (quoting *Wilson v. Henkle*, 45 Wn. App. 162, 169, 724 P.2d 1069 (1986)). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Go2Net, Inc. v. C I Host, Inc.*, 115 Wn. App. 73, 88, 60 P.3d 1245 (2003). A court's decision is manifestly unreasonable if it adopts a view that no reasonable person would take. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). And its decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts. *Id.*

---

[5] Christiansen and Fueston also assign error to the court's ruling that they pay the cost of the court ordered neutral accounting. They argue that Williams' false claims of financial skullduggery caused the court to order the accounting, so he should be solely responsible for the costs. But the trial court ordered the neutral accounting after Williams submitted financial records challenging the accounting Christiansen and Fueston originally provided the court. And the court said it ordered the neutral accounting because it could not "really trust the accounting that [had] been provided by either side." And, in any event, Christiansen and Fueston do not support their assignment of error with meaningful argument or citation to authority. So, we do not address it. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (we do not consider argument unsupported by citation to authority).

We interpret the terms of a contract de novo. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). In doing so, we try to determine the parties' intent by focusing on the objective manifestations of the contract rather than on the unexpressed subjective intent of the parties. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "Clear and unambiguous contracts are enforced as written." *Grey v. Leach*, 158 Wn. App. 837, 850, 244 P.3d 970 (2010).

A. Oral Agreement

Williams argues Fueston's oral agreement with Scott does not bind CFW because it violates section 9 of the OA. We disagree.

Section 9 of CFW's OA is titled, "Books, Records and Tax Returns." It requires that all members of the LLC "shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the [LLC] in accordance with generally accepted accounting principles." It then describes the LLC's responsibility to provide an annual report, timely pay taxes, maintain records for inspection, and furnish financial records on request.

Nothing in section 9 precludes members from making oral agreements for services. Instead, the section ensures that CFW members maintain complete and accurate records of their transactions so the LLC can meet its accounting obligations. And the record shows that Fueston complied with that obligation. Scott gave Fueston an invoice describing the work he performed for the LLC and the amount of compensation due. Fueston kept a copy of that invoice. And he

kept a copy of the check used to pay Scott. From those documents, the LLC could accurately enter the transaction in its books.[6]

### B. Transfer of LLC Member Interest

Williams argues that even if the oral agreement with Scott is valid, the trial court properly rejected it as an improper transfer of his membership interest under section 12 of CFW's OA. Again, we disagree.

Section 12 of the OA limits the circumstances under which a member may assign his interest in CFW to a third party. It states, in relevant part:

> [N]o Member or other person holding any interest in the [LLC] may assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of his interest in the [LLC], including without limitation the capital, profits or distributions of the [LLC] without the prior written consent of the other Members in each instance.

Any transfer of "all or any part of the interest of a Member in the [LLC] . . . in violation of the provisions hereof shall be null and void for all purposes."[7]

Williams alleges that Christiansen and Fueston violated section 12 by transferring Williams' interest in CFW to Scott. But section 12 restricts how a member may transfer their own interest in the LLC to a third party. It does not

---

[6] At the June 22, 2023 hearing, Judge Evans told the parties that Judge Martin declared in her 2020 findings of fact and conclusions of law that any oral agreements executed on behalf of the LLC were not "verifiable" and that her ruling is now the "law of the case." We see no such language in Judge Martin's findings.

[7] In his August 25, 2023 written Ruling, Judge Evans concluded that Fueston's agreement with Scott violated section 19 of the OA because "insufficient documentation, agreement and specification has been presented as to the ultimate contributions and contractual obligations of Scott . . . to the CFW LLC property in question." But section 19 does not govern the sufficiency of documentation. And as much as the court concluded that no evidence showed Scott's responsibilities or documented the work he performed on behalf of CFW, the record does not support the conclusion. Scott's declaration describes in detail his duties and the work he performed. On appeal, Williams does not contest that Scott provided necessary services to CFW.

address Williams' allegation that other members unlawfully disposed of his interest. As a result, section 12 of the OA is inapt.

Finally, Williams argues Judge Martin reached a contrary conclusion in her November 10, 2020 findings of fact and conclusion of law. He points to the court's finding of fact 60 and conclusion of law 14, which both state that "[n]o provision within the Defendant LLCs' [OAs] allow for the managers of the Defendant LLCs to retain and/or convert other member's proceeds of sale without the consent of that member." But that finding and conclusion relate to Williams' allegation that Christiansen and Fueston seized Williams' 33 percent share of profits from one LLC and distributed them to other LLCs without Williams' consent. Here, Christiansen and Fueston did not seize any portion of Williams' net profits[8] to satisfy his obligations to another entity. Instead, they compensated Scott using CFW's assets for services he performed on behalf of the LLC.

Because Fueston's agreement with Scott was not contrary to section 12 of the OA, the court erred by concluding that Christiansen and Fueston should

---

[8] Under section 8 of CFW's OA, "net profits" are those the LLC earned from its business "after all expenses incurred in connection therewith have been paid." And section 8 provides that CFW's net profit shall be determined by the LLC accountants and that each member is entitled to their share of net profits at the end of each fiscal year. The record shows that CFW paid Scott as an LLC expense in December 2020, well before apportionment of net profits in September 2022.

solely bear the cost of his services.[9]

2. Attorney Fees in the Trial Court

Christiansen and Fueston argue the trial court erred by denying their request for attorney fees.

We apply a two-part standard of review to a trial court's award or denial of attorney fees. *Falcon Props. LLC v. Bowfits 1308 LLC*, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020). First, we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity. *Id.* Second, we review the decision to award or deny discretionary attorney fees for abuse of discretion. *Id.* Courts may award attorney fees only when a contract provision, a statute, or a recognized ground in equity authorizes it. *King County v. Vinci Constr. Grands Projects/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017).

Christiansen and Fueston argued below that they should recover attorney fees under the language of the OA, as CR 11 sanctions, and as reimbursement from the LLC under RCW 25.15.041. The trial court did not analyze whether Christiansen and Fueston were entitled to attorney fees because it concluded that neither party prevailed. On remand, Christiansen and Fueston will be the

---

[9] The trial court also concluded that the services agreement with Scott violates sections 13 and 19 of the OA. Section 13 requires a member to first offer in writing to sell or convey interests to another member before transferring it to a third party. And section 19 requires that any amendment to the OA must be made by vote or consent of all members. Because we conclude that Fueston's agreement with Scott did not transfer Williams' interest in the LLC and that no evidence shows the agreement amended the OA, the record does not support the court's conclusions.

prevailing parties.  As such, the trial court should determine whether they are entitled to an award of attorney fees.

3.  Attorney Fees on Appeal

Christiansen and Fueston request attorney fees on appeal under the language of the OA, as CR 11 sanctions, and as reimbursement from the LLC under RCW 25.15.041.  Under RAP 18.1(a), we may award attorney fees on appeal if "applicable law grants to a party the right to recover reasonable attorney fees."

A.  OA

Christiansen and Fueston request fees under section 21 of the OA.  That section governs how the parties will manage disputes.  Under subsection (c), the substantially prevailing party at an arbitration "shall have [(sic)] be entitled to recover from the other party all its reasonable costs, expenses and attorney fees incurred at the arbitration or in any effort to have the award enforced."  While Christiansen and Fueston have substantially prevailed on appeal, this proceeding was not an arbitration.  As a result, the OA does not entitle Christiansen and Fueston to attorney fees on appeal.

B.  CR 11

Christiansen and Fueston also ask for attorney fees as a sanction under CR 11.  Under CR 11(a),

> [t]he signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1)  it is well grounded in fact;

(2)  it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3)  it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a person signs a pleading in violation of this rule, the court "may impose upon the person who signed it, a represented party, or both, an appropriate sanction," which may include a reasonable attorney fee.  CR 11(a)(4).

Christiansen and Fueston do not explain what conduct on appeal warrants CR 11 sanctions against Williams.  As a result, we deny their request.

C.  RCW 25.15.041

Finally, Christiansen and Fueston request fees on appeal under RCW 25.15.041.  Under RCW 25.15.041(1), an LLC

may indemnify any member or manager from and against . . . expenses incurred in a proceeding or obligate itself to advance or reimburse expenses incurred in a proceeding to which a person is a party because such person is, or was, a member or a manager, provided that no such indemnity shall indemnify a member or a manager from or on account of acts or omissions of the member or manager finally adjudged to be intentional misconduct or a knowing violation of law by the member or manager, or conduct of the member or manager adjudged to be in violation of RCW 25.15.231.

"Expenses" include "counsel fees."  RCW 25.15.041(3)(a).

RCW 25.15.041(1) authorizes an LLC to indemnify its members from certain legal expenses incurred because of their status as a member or manager of the LLC so long as the member or manager is not "finally adjudged to have engaged in misconduct or a knowing violation of [the] law."  The statute provides for permissive indemnification by the LLC itself rather than a source of reimbursement of fees and costs by the court.  As much as Christiansen and

15

Fueston request authorization from this court to seek indemnification for their expenses from CFW, we authorize them to do so.

Because the trial court erred by concluding that Fueston's agreement with Scott is invalid under the OA, we reverse and remand for the trial court to reclassify the $54,000 payment to Scott as an LLC expense and to rule on Christiansen and Fueston's request for attorney fees.

_____, ACJ

WE CONCUR:

_____        _____